(172 App. Div. 800)

## In re JAMES.

(Supreme Court, Appellate Division, Third Department.   May 18, 1916.)

EXECUTORS AND ADMINISTRATORS ⬤⟲508(1)—ACCOUNTING—SURCHARGING AC-
COUNT.

>     In a proceeding for judicial settlement of the account of an executrix,
> a decree surcharging her account and denying commissions, was errone-
> ous.

>     [Ed. Note.—For other cases, see Executors and Administrators, Cent.
> Dig. §§ 2192–2196; Dec. Dig. ⬤⟲508(1).]

>     Cochrane and Howard, JJ., dissenting.

Appeal from Surrogate's Court, Ulster County.

In the matter of the judicial settlement of the account of Elizabeth
Pratt de Gasquet James, as executrix of the will of Amedee de Gas-
quet James, deceased.   Upon proceedings by George Watson Pratt de
Gasquet James and others to compel an accounting by her as ancillary
executrix, the executrix brings a proceeding for a voluntary judicial
settlement of her account as executrix, and, from a decree judicially
settling her account, she appeals.   Decree reversed on the law and
facts.

Argued before KELLOGG, P. J., and LYON, HOWARD, WOOD-
WARD, and COCHRANE, JJ.

Charles S. Aronstam, of New York City (C. A. Hereshoff Bartlett,
of Paris, France, of counsel), for appellant.

J. Noble Hayes, of New York City, for respondents James and an-
other.

Coudert Bros., of New York City (Howard Thayer Kingsbury, of
New York City, of counsel), for respondent De Libran.

Howard Chipp, of Kingston, special guardian, for infant respondents.

JOHN M. KELLOGG, P. J.   Count Amedee de Gasquet James was
born at New Orleans.   His mother was a French woman.   They re-
moved from New Orleans to France about 1863, where he lived with
his mother until his marriage with the appellant in 1881.   He inherited
from his mother, or acquired through her, the title of Count in France,
and lived and died there as a French nobleman.   His mother was
buried in the family vault at Loudres, France, where at his request he
was buried.   In 1881 he came from France to this state for the pur-
pose of marrying the appellant, and immediately after the marriage they
returned to France and made it their home.   At and before the time
of the marriage it was the intention of both to go to France to live.
From the time he left New Orleans until the date of his death he had
no other domicile or residence than France, and from the time of her
marriage the appellant has had no other domicile or residence.   It
seems clear that France was the matrimonial domicile, and that the
marriage rights of the spouses depend upon the laws of France.   His
will, written by himself in French, was made and probated in France,
and the law of France should determine its effect and control the set-
tlement of his estate.   The controversy here arises between the mother,

⬤⟲For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

their two daughters, son, and two grandchildren, representing a deceased daughter. Two of the daughters married French husbands and are citizens and residents of France. The other daughter married a major in the German army, lived and died in Germany, and her minor children, after their mother's death, resided with the appellant until about the time these proceedings were brought, when they returned to their father in Germany. The son has always lived in France. The appellant has not resided in America since her marriage, and none of the·other parties ever resided here. All acts or neglects of the appellant with reference to this estate occurred in France.

It is claimed, however, that by probating her husband's will and taking the property given to her thereunder, she has renounced her marital rights and is limited strictly to the provisions of the will, or, as it is otherwise stated, "by the judgment of the French court that question is res adjudicata here." The French judgment is what we would call the decree admitting the will to probate. The will had been filed before that time in the probate office, but the heirs and next of kin had not been cited, and this judgment upon the appellant's petition was made to establish its validity. It recites that the action was brought by the widow to require the delivery to her of the legacies; that the will is regular in form, and it is proper to grant her prayer; and it directs that the will be carried out according to its form and tenor and that "the specific legacy" given to her by the will be delivered. There is nothing before us to show what proof was submitted to the French court, or that any other questions were considered or determined. We must assume that the court made proper inquiry and had knowledge of the facts necessary to enable it to pass upon the validity of the will. We cannot assume that any material fact was suppressed. It appeared before the court that, while the testator was an American subject, he was a resident and property owner of France, with several residences and establishments there; that he was a French count, and that he left a wife and four children surviving him; that his property was situated in America, France, and elsewhere, and that the will was written by him in French, indicating an intent that it should be probated in France; and that he and his family were permanent residents of France. The court knew that the system of community prevailed generally in France between husband and wife, unless by contract between them it was otherwise provided, and there is no suggestion that any such contract ever existed. The appellant, her children, and the Republic were represented by counsel.

Upon the death of a husband, the application of the community system is the ordinary rule in France. Any other property rights between the spouses would be an exception to the general rule. The natural inference therefore arises that it was assumed that the community system applied to these spouses, or that so far as the matters before the court were concerned it was immaterial whether it applied or not. If it had been necessary to determine whether the community system applied in this case, further information would have been required. A conclusion that the community system did not apply would have been against the facts and the law of the case, and necessarily would have resulted from false information or carelessness upon the

part of the court and counsel, none of which can be assumed. The inference follows that the court assumed that community existed, or determined that it was immaterial whether or not it existed; that in any and all events the will was valid and effectual. It is a pure effort of the imagination to assume that the decree established, directly or indirectly, that the community system did not apply. If any inference is to be drawn upon that subject, it is to the contrary. The decree establishes that the benefits given to the wife by the will are not to be prejudice of the rights of the children when the true marital rights of the wife and all the rights of the children are considered. The decree must have been made in consideration of her marital rights, and not in disregard of them. The proper inference is that the court concluded that the will did not in any way violate the marital rights of the appellant or any rights of the children, and that it was valid, whatever those rights might be. The question whether the system of community obtained between these spouses was not before the court, and was not passed upon by the court, and therefore the decree cannot be res adjudicata upon that question. "A judgment is not a bar or estoppel in a subsequent litigation between the same parties of a cause of action which might have been pleaded and determined by it, but was not, although it may be a conclusive adjudication as to questions or facts which were actually litigated and determined." Cook v. Conners, 215 N. Y. 175, 178, 109 N. E. 78, L. R. A. 1916A, 1074. We may therefore say that the decree is not res adjudicata against the appellant.

The appellant, by proving the will and taking possession of the European property, did not elect to forego her rights under the French law. The will is not in any manner inconsistent with those rights. The value of the estate in Europe and of the appellant's property is not clearly shown. We infer from the record that the American property was of the value of about $600,000; the European property of about $300,000. The surrogate stated upon the trial that he would consider the American estate as two-thirds and the French estate as one-third of the whole property, and none of the parties objected. The property the appellant contributed was apparently about $200,000, making the community property about $1,100,000, of which the appellant's interest would be about $550,000. But the testator was at liberty to will to her a part at least of his share of the community property. It is said that the French law prohibits a person who leaves him surviving three or more children from willing away more than one-quarter of his property. We do not, however, assume under that rule that three-quarters of the property must go to the children. If he gave to a friend or charity one-quarter of his property, it does not follow that the children would receive the remaining three-quarters and the widow nothing. The law probably means that as to three-fourths of his property in such a case he shall die intestate. It does not appear how such three-fourths of his property would be divided between the widow and children. No rights of the children are invaded, so long as the widow receives one-half only of the common property and one-quarter of the testator's share in the remainder. Probably she could be given more; but, in the absence of proof of the French law upon that subject, it cannot now be determined. If, however, the bequests to her, with her

interests in the community property, exceed the proper limit, compensation may be made in the settlement of the estate.

The French decree recites that the tribunal had heard the arguments and the explanation of the attorneys in the action, and the arguments of the attorneys for the Republic, and after deliberation thereon, in conformity with law, made the decree. This indicates that the general situation of the estate and of the spouses was laid before the court, so that it understandingly could determine that the widow was getting no more than her just rights under the will, and that the interests of the children under the statutes of France were not violated by its terms. We cannot say that it determined contrary to the facts or in ignorance of them. It is better to assume that it had before it all the facts, and the record before us indicates that, if it had known the facts, the decree could not have been otherwise. By taking the property in Europe the widow received, on account of her share, the houses, furniture, and other property in use by the testator, while the children's share is to be paid from securities of real money value. A case is cited from the French courts holding that:

"Parties who have voluntarily carried a will in execution of the alleged defects of which they were aware are presumed to have ratified the provisions therein contained."

It was, however, the duty of the appellant, as executrix, to prove this will, and there is nothing to indicate that she was aware of any defect, or had any information which at any time put her to an election whether she would take under the will or otherwise. The facts as to the property and the parties show clearly that there was no defect in the will, and that the appellant, by the so-called legacies, has received less than she was entitled to under the will and the rules of law applicable to it. Apparently the appellant is not a business woman, and we may assume that she had no knowledge of her community rights; but that fact cannot prejudice her. The function of a court is to do justice for the wise and the unwise, and if a party comes into court not fully understanding his rights, the court will not sacrifice those rights, but will administer the law as it is, unless by his mistaken conduct he has misled others to their detriment. The appellant has taken no rights to which she was not strictly entitled, and by proving the will and taking the bequests given her she has not in any way wronged or prejudiced her children. There is no reason why she should be compelled to surrender to them her marital rights, when there is nothing in the will or in her acts requiring her to so do. She has received less than she is entitled to receive, and her children are not injured by the fact that she has not yet received all she is entitled to, and they cannot urge that she is estopped thereby from claiming her legal rights, or that she has waived them. Estoppels and waivers arise to protect persons from injury by the irregular acts of another; here no injury can follow. There is no injury to the children from the fact that the mother took land and furniture, instead of money, or from the fact that she has failed until now to demand her full legal rights. When the children raise technical legal objections to her detriment, she may properly invoke her legal rights.

We may add a few words to the will without changing its effect. If testator had given to his wife his interest in the property in Europe, and had given to his children his interest in the property in America, there could be no reasonable objection to the will. But he could give her no greater interest in the property in Europe than he had, and could give to the children no greater interest in the property in America than he had; therefore the will is not inconsistent with the community system. There was no defect in it calling for an election upon her part. When the testator gives his fortune in America to his children, a reasonable construction of the provision limits it to the fortune in America which he owned and was capable of giving to them. It does not mean the wife's fortune, or the wife's interest in the common property in America; it only means that the children are given all the property in America which he owns and is capable of disposing of by will. We therefore conclude that the findings that the appellant has waived her legal rights of community are against the evidence and the law of the case.

It is urged that under the law of France the acceptance of a residuary legacy waives the community rights and that the bequest to the appellant is a residuary legacy. The French court, in its decree, calls the provisions in behalf of the appellant "the specific legacy." The different residences in France, with the furniture, and the other items of property given to her, are named. These are not residuary bequests; apparently the testator made no residuary bequests. If it had turned out that he was the owner of property in Russia or Spain, it is clear, under this will, that he would have died intestate as to that property.

After the death of her daughter, it seemed that her minor children would be better cared for by appellant than by the father, a major in the German army, and it was arranged that the children were to be taken and cared for by her, and she was to pay the father from their income 1,000 marks a month, and she continued such payments for five years. She swears "the German law states that he is entitled to the use of such income." It seemed to her, and I think wisely, in the interest of the grandchildren, that it was better to pay the father 1,000 marks a month and retain the balance of the income for the children, and that they should be brought up by her, instead of being intrusted by the father, who was in the army, to strangers. Under the peculiar circumstances of this case, I think it was error to surcharge her accounts with 60,000 marks on account of such payments. She should be allowed a reasonable compensation from the income of the infants for their maintenance when with her.

Some of the securities left by the testator depreciated in value, and some became worthless. Some of them paid a substantial income for a long time, and then become valueless. The executrix's account has been surcharged with about $40,000 on account of this depreciation in value. I think this was error. She was not required to sell and convert the securities into money. The will contemplates that she, as the head of the family, was to administer the property and take care of the children, and she would have violated her duty if she had converted the great mass of securities into money, thus making them of but little productive value. If she had sold the securities and bought others,

there was the same liability of loss or depreciation. The will did not contemplate an immediate division of the estate, and it was not in the interest of the children that such division should be made. The mother properly left the securities undivided while her children were growing up and obtaining settlements in life. The provision of the will authorizing her to put the securities in charge of a trust company indicates that they were not to be divided up, but were to be kept together, and that the income was intended for the support and use of the children. Until the appellant married there was no substantial reason why the estate should be divided, and it was evidently better for all concerned that it should remain with the safe custodians in America. Until that time no criticism can be made upon her for not making a division. No negligence has been shown which should properly charge her with the depreciation or loss on account of the securities left by the testator. The decree is erroneous in that respect.

The decree holds her liable for the performance of every duty as an executrix, and has surcharged her account in a very large sum because of certain mistakes which she has apparently made in administering the trust. Evidently she is perfectly able to make good any loss which has come to the estate from her fault. Her good faith is unquestioned; she kept no books of account. The income was remitted to her from the agents in America, deposited in a bank, and paid out by checks or by the bank to the children calling for money. Naturally mistakes would occur when an attorney, without any substantial assistance from her, prepares her account for settlement. But there is nothing to indicate any bad faith or wrongful act upon her part, and if she is required to make good the losses which the estate has suffered through her, if any, there is no good reason why, under the circumstances of this case, she should be denied commissions. She is charged with every responsibility of an executrix, and should have the benefit coming to the office. She is entitled to full commissions and her expenses and disbursements in the settlement and the administration of the estate.

I agree that in the discretion of the court this accounting might proceed to the end in the Surrogate's Court of Ulster County or be remitted to the French courts. The estate is a large one; the husband selected his wife as his executrix when he must have known that she had no business capacity qualifying her for that position. His securities in America were placed with brokers or banks, who had authority to buy or sell at their discretion; in other words, to transact his business for him. His business in life seemed to be to live up to his title and spend his income, and the position in which he left his family required the mother, with this family of daughters and a son, to maintain their position in life and make the necessary expenditures which their rank, fortune, and position required, and which would tend to give them reasonable settlements in life. The provision in the will authorizing her to put the securities in America in charge of one of the great trust companies evidently meant that the trust company should exercise with reference to them substantially the authority which his brokers had exercised in his case, to collect and remit the income, investing and reinvesting the corpus from time to time as might be necessary.

It is not seriously claimed that the appellant, as mother, has neglected any reasonable duty to her children, or that she did anything or failed to do anything with reference to their bringing up which is fairly subject to criticism. It is not urged that the money was improperly expended for them or by them. The criticism made is: (1) That she did not make an earlier division of the estate, and upon that basis substantially she is denied commissions. (2) Many expenditures which she claims to have been made have been surcharged to the account, for the reason that she produced no vouchers. She was precluded from showing loans made by her to her husband and money paid by her to her deceased daughter. It is conceded that none of the children ever gave her vouchers for the money paid them, and we have the result, perhaps to a certain extent compelled by our law, that this mother, who at all times has exercised her best ability and judgment for the interest of her family and in the management of the estate, who has had able bankers and counsel assisting her, and who has not attempted to make any profit from or take any advantage of the estate, finds her account surcharged about $230,000 in a considerable part on account of depreciation of securities, absence of vouchers, or exclusion of the appellant's testimony as to payments made by her. It was error to disallow the 10,000 francs on account of the automobile.

The fact that the appellant is now a German subject, that the grandchildren and their father are residents of Germany and that France and Germany are at war, are circumstances which may well be considered in retaining the settlement of the estate in Surrogate's Court. Although there is difficulty in applying the French law to the various circumstances in this case, if the case is to be concluded here, instead of at the natural tribunal in France, it should not be at the prejudice of the appellant. The payments made by her to her husband and to and for her daughters were made in France, her acts and neglects took place in France, and it would be unfair to her to have the evidence of such payments controlled by the law of this state if a different rule exists in France. Here an executrix should produce vouchers for payments; concededly she took none. It may be the law of France does not require her to take them, and permits other proof of the payments. The requirement in our law that an executor must produce vouchers is a statutory provision; we cannot assume that it exists in France. The practice is so reasonable, and the contrary position would be so unjust, that it is fair to assume, in the absence of proof, that the fact of the interest of the witness goes to the credibility rather than to the competency of the witness, that we are led to infer that if this settlement were held in France the appellant, by her own oath or otherwise, might establish the alleged payments to her husband, her daughters, and to her deceased daughter and others. If the trial is kept here, the appellant should have the benefit of the rules of evidence which would apply in a French court upon the settlement of an estate.

It therefore seems that, unless the respondents stipulate that the appellant may prove such expenditures in any manner which would be competent proof in a settlement of her accounts in a French court, the matter should be remitted to the French courts for trial and deter-

mination. In case such stipulation is filed, the accounting may proceed to a final determination before the surrogate. If the case continues before the surrogate, an open commission should issue, directed to a competent person and returnable at a reasonable time at a reasonable place in France, where the appellant may submit any evidence she may desire, with the right to the respondents to offer evidence in answer thereto. The securities of the estate in America being on deposit with the Farmers' Loan & Trust Company to be held subject to the order of the court, no material injury can come to the parties interested by such delays as are necessary for the proper disposition of the case, and the surrogate should have granted the commission asked for by the appellant.

The decree should be reversed upon the law and the facts, and, if the stipulation is filed within 20 days after the entry of the order of this court, the matter is remitted to the surrogate for his further proceedings, saving, however, the evidence, admissions, and proceedings already had, so far as consistent herewith. If such stipulation is not filed, the evidence and proceedings already had may be remitted to the French court for its action. Costs and disbursements should be awarded to the appellant to be paid from the interests of the respondents in the American estate. All concur (LYON, J., in result), except COCHRANE, J., dissenting in opinion, in which HOWARD, J., concurs. Order to be settled by KELLOGG, P. J.

The court disapproves of the findings of fact numbered 8, 9, 16, 17, 18, 19, 20, 21, 22, 23, 24, 38, 39, 40, and 41.

COCHRANE, J. (dissenting). Amedee de Gasquet James, an American citizen born in New Orleans, but a resident of France, married in New York April 21, 1881, the appellant herein, who was also an American citizen. Immediately after their marriage they went to France, where they resided until the death of the former, which occurred July 28, 1903. They had four children. Three of the children were infants at the time of the death of their father. One has since died, leaving two children, who are still infants. The deceased left real and personal property in Europe and also personal property in this country. The deceased left a last will and testament dated June 10, 1902, and a codicil thereto dated February 14, 1903, whereby he gave to his wife, the appellant herein, all his property, real and personal, in Europe, including, as stated in the will, "the full ownership of all securities without exception by me deposited either in Paris or in London with bankers," except that she was to have the enjoyment during her life of his jewels and diamonds and those of his mother. The will made this additional provision for his children, viz.:

"My fortune which is in America shall be divided between my children. I authorize my wife to put this fortune into the hands of one of the big trust companies (American)."

He designated his wife as executrix of his will. The will and codicil were on the 30th day of July, 1903, duly admitted to probate or established in France according to the Laws of the French Republic.

There is no claim that the appellant ever exercised the authority given her by the will to put the estate in the hands of a trust company.

On the 19th day of March, 1904, in the Tribunal of First Instance of Dinan, being a court in France having jurisdiction in the premises in an action or proceeding instituted in such court by the appellant, and to which all of the legatees under the will of the deceased were parties, a judgment or decree was duly rendered by said Tribunal of First Instance, wherein it was recited that "the various defendants have submitted their rights to the court," and said judgment or decree then declared and adjudged that said will and codicil should "be carried out according to their form and tenor," and that delivery should be made to the appellant of the property given to her in and by said will and codicil. Such proceedings were also had in the Surrogate's Court of Ulster County, N. Y., in which county certain property of the deceased was located, that on the 22d day of March, 1904, the said will and codicil were duly established by said Surrogate's Court, and ancillary letters testamentary were duly issued to the appellant.

The appellant never rendered any account of her proceedings, either in this country or in France, until the year 1912, when, proceedings having been instituted in the Surrogate's Court of Ulster County by the legatees under the will to compel an accounting by her as ancillary executrix, she instituted this proceeding for a voluntary judicial settlement of her account as such executrix. The other parties to the proceeding are the three surviving children, legatees under the will of her husband, all of whom appeared in person and by attorney, and the two infant children of the deceased daughter, who appeared by special guardian. Objections to the account of the appellant were filed by the other parties to the proceeding, and after a hearing before the surrogate he surcharged the account of the testatrix with a large amount and directed distribution of the estate to the three children of the deceased and to the general guardian of the two infant children of the deceased daughter.

The main contention of the appellant is that she and her husband not only resided, but were domiciled, in France; that her property rights pertaining to the estate of her deceased husband are to be determined according to the law of France; that according to such law "legal community," so called, existed between her husband and herself, and consisted of all the property which she and her husband owned at the time of their marriage, or which they acquired thereafter; and that one-half of the community property belonged to the appellant, and that her husband had no power to dispose of the same. For the purposes of this appeal none of the foregoing propositions have the effect of impairing the validity of the decree made by the surrogate for the reasons hereafter stated.

First. The appellant testified that she took and accepted possession of the property of her husband given her by his will, including the real estate which he owned. In Bayerque v. Ste. St. Jean Baptiste d'Oleron, Court of Appeals of Pau, Clunet's Journal of International Law, 1887, p. 479, the French court decided as follows:

"Parties who have voluntarily carried a will into execution, of the alleged defects of which they were aware, are presumed to have ratified the provisions therein contained. Whereas, the claim of the spouses Bayerque ought to be further rejected, because of the voluntary carrying out the provisions of Romain Bayerque's will, while they were aware of defects which would affect it under the French law, if submitted to said law; whereas, it is impossible not to see in such acts the most absolute approval of the carrying out of the will of Romain Bayerque, the remittance of said sum having only been made to him, in conformity with the will, provided the distribution should be made in compliance with the wishes of the testator; that it is thereby shown that he accepted the mission intrusted to him in regard thereto by the will, and consequently ratified thereby its provisions."

The learned counsel for the appellant in answer to the above quotes other French law to the effect that, if the legacy made by a husband to his wife where community exists is not a residuary legacy, the widow may at the same time accept the legacy and maintain her rights in the community. But it is stated in the authority cited:

"If the legacy is residuary, the widow is obliged to make her option, and in accepting the legacy she impliedly renounces a community." Dalloz, 1909, part 2, page 141, note 2.

This seems to draw a distinction between a residuary legacy and one which is not a residuary legacy, and counsel for the appellant contends that her legacy under the will of her husband is not a residuary legacy. Whether it would, strictly speaking, be properly characterized as a residuary legacy, need not be determined, because in its general features and effect it partakes of the character of a residuary legacy. The effect of the testamentary provision for the appellant under the will is precisely the same as if the decedent, instead of employing the language actually used, had said:

"My fortune which is in America shall be divided between my children, and all the rest, residue, and remainder of my estate I give to my wife."

Second. If there be any doubt as to the law of France applicable to this question, it has been set at rest by the French court in reference to this particular case. At the instance of the appellant that court declared by its judgment or decree, in an action or proceeding to which all the legatees under the will of the deceased were parties, that the various defendants had "submitted their rights to the court," and that the will and codicil should "be carried out according to their form and tenor." It is therefore no longer a question of what the French law is, but the question is what the French courts have declared that law to be in reference to the will of the deceased, and it has been determined by the French court that the will shall be given effect according to its tenor. The appellant suggests that resort was had by her to the French court as a matter of necessity, and that this judgment or decree was merely a formality. If that be so, it does not alter the effect of such judgment or decree, and if the question is material, as the appellant insists it is, such judgment or decree should be considered by us as a definite and specific declaration by the courts of France as to the meaning and effect of the testamentary disposition which has been made by the deceased of his estate. By the judgment of the French court that question is res adjudicata here.

Third. The appellant has offered no evidence of the amount or value of the European property left by her husband or of her own property which she now claims went into the "legal community." The entire theory of her proceeding has been that there was no such "legal community." Her account filed herein was limited only to the American estate of her husband and contained this statement:

"This account covers and includes only the American estate of the decedent which has come into my hands under said ancillary letters testamentary."

She stated in her answer to the petition of certain of the respondents to compel an accounting that she had in her own right "at least one-half million dollars unpledged and unincumbered"; but there is no more definite statement than that as to the value of her individual estate. Through her counsel and herself she resisted all efforts made by the respondents to ascertain the value of her husband's European property, and insisted on limiting the accounting to the American portion of his estate. For these reasons, therefore, it seems clear that the contention of the appellant that the distribution of her husband's estate has not been decreed by the surrogate in accordance with the law of France is untenable.

It is further contended that the accounting was extended beyond its proper limits, because the appellant was merely an ancillary executrix in this state and should not have been subjected here to a general accounting. It is well settled that ancillary executors have the same general power in this state as domestic executors so far as personal property is concerned. Lockwood v. United States Steel Corporation, 209 N. Y. 375, 103 N. E. 697, L. R. A. 1915C, 471; Smith v. Second National Bank, 169 N. Y. 467, 62 N. E. 577; Hopper v. Hopper, 125 N. Y. 400, 404, 26 N. E. 457, 12 L. R. A. 237. That would seem to be more particularly true where, as in this case, the ancillary executor and the principal executor are one and the same person. In Lockwood v. United States Steel Corporation, supra, it was held:

"Ancillary administration in this state is regulated by statute, and an ancillary executor or administrator has the same general power as a domestic executor or administrator, except in disposing of the decedent's real property for the payment of his debts and funeral expenses."

And in Hopper v. Hopper, supra, it was written:

"The Code provides (section 2702) that all the provisions of its eighteenth chapter relating generally to Surrogates' Courts and proceedings therein, and to the rights, powers, duties and liabilities of an executor or administrator shall, with some minor exceptions, apply to a person to whom ancillary letters are granted, and thus puts him upon a level, so far as his official character is concerned, with the ordinary executors appointed by our courts."

Whether our courts will exercise the power they thus possess, and decree distribution of the assets collected in this jurisdiction under ancillary letters granted by them, or will remit the disposition thereof to the courts of the testator's domicile, is a question of discretion, to be determined with reference to the facts of each particular case. Despard v. Churchill, 53 N. Y. 192; Matter of Dunn, 39 App. Div. 510, 513, 57 N. Y. Supp. 444; Matter of Hughes, 95 N. Y. 55. If the appellant had at the institution of this proceeding taken the position that

the Surrogate's Court should not exercise jurisdiction in respect to her proceedings, and should leave the matter of distribution to the foreign country, it may well be that the learned surrogate would have sustained her contention. But, on the contrary, she invoked the jurisdiction of the Surrogate's Court. The respondents were legally entitled to an accounting by her as ancillary executrix, and that was all they asked. She instituted an entirely independent proceeding, and filed her petition for a voluntary judicial settlement of her account, and in her account as filed she credited herself with moneys expended in Europe, including testamentary and other expenses incurred there, and payments made there to the legatees and for their benefit. The proceeding initiated by her lacked none of the features of a general accounting, except that she insisted on not disclosing what property she had received in Europe. The determination of the surrogate has not gone beyond any feature thus injected by the appellant herself into the proceeding which she instituted. He has only adjusted items which she has herself presented in reduction of her own liability. Having filed her account, the proceeding was delayed about a year during the absence of the appellant from this country. The respondents in the meantime came to this country, filed objections to the account, were personally examined as witnesses before the surrogate in support of their objections, and were subjected to the delay and expense occasioned by the general accounting, such as the appellant herself had instituted.

It is true that about a year from the time when her account was filed, and after the respondents had introduced all of their testimony in opposition thereto, the appellant endeavored by motion to limit the account to the assets of the estate and to her transactions within the state of New York. But as she had herself invoked the power of the surrogate, and had set in motion the machinery of the court for a general accounting, and had thereby occasioned delay and expense, it was not an improper exercise of discretion for the surrogate then to continue and conclude the proceeding upon the basis which she had initiated. All of the parties were before the court, and the interests of all were promoted by decreeing distribution, rather than by remitting the proceeds to France for that purpose. The latter course would have involved merely more expense.

The surrogate refused to allow the appellant commissions. The estate was practically unadministered for a period of more than eight years. The preponderance of evidence shows, and the surrogate has so found, that the respondents were repeatedly demanding an accounting. During a portion of the time some of them were infants, and some of them are infants even now. The estate having been left to take care of itself, and losses having occurred as the result of such want of administration, it is difficult to see how commissions have been earned.

The findings of the surrogate and his directions seem to rest on sufficient evidence, except in one particular. The appellant has credited herself and charged her son with 20,000 francs for an automobile purchased by her for him after he was 21 years old. After her son had used the automobile for some time, he sold it to the appellant for

10,000 francs, which she has not paid. The surrogate reduced the item of 20,000 francs in her account to 10,000 francs, as we think erroneously. While the appellant owes her son 10,000 francs, it is not within the province of the court to adjust that indebtedness on this accounting, and the decree should be modified accordingly.

The decree should be modified in respect to the item for automobile as indicated in the opinion, and, as so modified, affirmed.

HOWARD, J., concurs.[1]