In the Matter of the Judicial Settlement of the Account of Proceedings of ELIZABETH PRATT DE GASQUET JAMES, as Ancillary Executrix, etc., of AMEDEE DE GASQUET JAMES, Deceased.

GEORGE W. PRATT DE GASQUET JAMES and Others, Appellants; ELIZABETH PRATT DE GASQUET JAMES and Others, Respondents.

Third Department, July 1, 1927.

Judgments — satisfaction — judgments were secured in this country against executrix and partially satisfied — proceedings instituted in France, where executrix resided and had property, finally resulted in favor of judgment creditors — settlement was made, however, on basis of francs at rate of exchange when proceedings were instituted — francs, at time of settlement, had greatly depreciated — so-called release receipt given in France did not prevent subsequent satisfaction of judgments here only to extent actually unpaid — judgments are valid here to extent actually unpaid.

Several judgments were recovered against the executrix in this State and were partly satisfied from property which she owned here. The executrix was then residing in France and has continued to reside there. Proceedings were instituted in France in 1922 for the purpose of collecting the balance due on the judgments, the executrix owning property in France. After about three years of litigation, which was contested by the executrix, settlement resulted. Under the terms of the settlement, however, the payment was made on the basis of the exchange value of francs at the time of the institution of the proceedings in France, and at the time the payment was made the value of the French franc had depreciated very materially, so that the result of the settlement was that the judgments were not actually fully paid. At the time of the settlement a so-called release receipt was executed in France, which, in effect, released and freed the property of the executrix from the judgments. The judgment creditors are entitled to have their judgments paid in full in American dollars, and the effect of the French settlement being to pay the judgments only in part, the judgments are still in force in this country to the extent of the unpaid portion thereof. COCHRANE, P. J., dissents.

APPEAL by George W. Pratt de Gasquet James and another from a decree and order of the Surrogate's Court of the county of Ulster, entered in the office of said Surrogate's Court on the 7th day of February, 1927, granting a motion of the ancillary executrix to declare satisfied a decree awarding certain sums to the appellants and vacating certain executions issued on said judgment. (See 128 Misc. 528.)

Appeal by David Keane, as receiver of the property, etc., of Elizabeth Pratt de Gasquet James, from an order of the Surrogate's Court of the county of Ulster, entered in the office of said Surrogate's Court on the 7th day of March, 1927, denying the motion of said receiver for an order vacating and setting aside the order and decree entered on February 7, 1927.

21

*J. Noble Hayes*, for the appellants.

*Root, Clark, Howland & Ballantine* [*Leo Gottlieb* and *H. H. Breland* of counsel], for the respondent, executrix.

*Geller, Rolston & Blanc*, for the respondent Farmers Loan and Trust Company.

DAVIS, J.   On November 3, 1917, a decree was made by the Surrogate's Court of Ulster county in which Elizabeth Pratt de Gasquet James, as ancillary executrix, was directed to pay certain specified sums to the legatees of her deceased husband.   The appellants were legatees entitled to receive the sum of $65,133.25 each.   Judgments for these amounts were entered in the Ulster county clerk's office.   (See Surrogate's Court Act, § 81.)   It is unnecessary to recite the facts upon which this decree was based. They have been heretofore fully stated.   (*Matter of James*, 172 App. Div. 800; 221 N. Y. 242.)

The executrix did not make the payments as directed.   She was then residing in France and has continued to reside there.   She owned property in this State and certain property was levied upon and sold.   Subsequently David Keane in proceedings supplementary to execution was appointed receiver of other property. Several actions have been commenced, founded on the conflicting claims of different parties, all having their basis in the decree heretofore mentioned.

In part the judgments were satisfied by execution sale but a substantial portion remained unpaid.   The aggrieved parties then undertook to make further collection in France where Mme. James had property.   On October 5, 1922, they instituted in France proceedings to enforce their judgment.   The action was resisted but the judgment creditors obtained an executory judgment which eventually was affirmed on appeal July 10, 1924, the appellate court remarking: " The appellant seemed to have no other object than to try every law trick to avoid to pay her children."   The judgment creditors then discovered that Mme. James had conveyed all her property to another, thereby defeating their attempts to make collection.

It then became necessary to begin an action to set aside these conveyances as made in fraud of creditors.   This action commenced October 13, 1924, terminated favorably to the judgment creditors on May 15, 1925, and the conveyances were determined to be null and void.   An appeal was taken from this judgment but before argument Mme. James gave notice to the judgment creditors to appear before a notary on December 15, 1925, and present their accounts and to receive payment under the reserva-

tions laid down by her attorney. The parties met. The amount remaining due with the interest was stated in francs. It was paid and an instrument called a "Release-receipt" was executed. This release contained certain reservations by both parties, which will be hereinafter stated. Nevertheless, the appeal involving the fraudulent conveyances went on to decision, resulting in favor of the judgment creditors and sustaining the judgment of the lower court. The significance of this determination on appeal after the adjustment between the parties is not apparent.

This controversy has arisen over the fact that between the date of instituting the proceeding and that of payment the value of the franc had greatly depreciated. It was necessary in obtaining the executory judgment to state the amount claimed in francs. This sum was stated at the prevailing rate of exchange on October 5, 1922, the date the proceeding was instituted. Francs were then of the value of 13.095 to the dollar. Judgment was given for the amount of the francs demanded in the pleading. At the time of payment the rate of exchange was 27.77 to the dollar. It is, therefore, apparent that the judgment creditors received in dollars only a portion of the judgment, leaving about $40,000 to $50,000 unpaid. It appears that there is still property in this State from which the amount unpaid could be collected. Evidently to prevent this, the motion was made in Surrogate's Court to have the judgments declared satisfied. The motion was granted and this appeal results.

There is no dispute between the parties as to the facts and very little as to the French law. A French lawyer on behalf of each of the parties has given an exposition of the state of the law in France covering the subject.

The theory of the appellants is, that both by legal principle and the reservations in the release-receipt, the judgment in this State is satisfied only to the extent of the money actually received in American dollars. That of the respondent is, that having sought a remedy in the courts of France, the payment of the judgment obtained there in francs and the release-receipt given constitute final and conclusive satisfaction of the judgment here.

This claim of the respondent, plainly stated, means that although the legatees have obtained judgment for definite sums in the Surrogate's Court against the executrix for her waste and dissipation of funds belonging to them, they must under some rule of law be satisfied and the executrix must be discharged from further obligation because after unjustified resistance she has finally paid a part of the obligation.

The statement of this proposition would naturally excite strict inquiry into the doctrine producing consequences so greatly at

variance with ordinary conceptions of the duties and obligations of an executrix in the management of an estate, and so foreign to equitable principles commonly recognized.

Foreign judgments have no extraterritorial effect except as they may be given recognition through comity. (*Grubel* v. *Nassauer*, 210 N. Y. 149.) We may eliminate from discussion the legal effect of judgments in the different States of the Union where courts are required by the Federal Constitution (Art. 4, § 1) to give full faith and credit to the judicial decrees of another State. Likewise, we may dismiss from consideration the effect of judgments rendered in suits brought in different jurisdictions on the same obligation on contract or in tort against one or several liable thereon, where the full satisfaction of one judgment conclusively satisfies all. But even this doctrine depends primarily on the theory of payment, and partial payment by one obligated does not release others likewise obligated if there is reservation in the release.

We may assume with some certainty that the doctrine is recognized that the satisfaction of a judgment implies payment or valuable benefit. Nothing less will restrain the judgment creditor from further activity in pressing his claim. (*Jaffray* v. *Davis*, 124 N. Y. 164, 167 *et seq.*; *Mance* v. *Hossington*, 205 id. 33.)

The judgment creditors had evidently obtained what they conveniently could in this State on the satisfaction of their judgment. This judgment had no effect in France except as it was recognized by comity as a legal obligation. Some proceeding dictated by the policy of the law and the procedure there prevailing was necessary to make the judgment executory. The proceeding results in an *exequatur*, which seems to be equivalent to our execution. In recognizing the judgment and aiding in its enforcement, the French courts required only to be satisfied that it was a valid, meritorious judgment obtained through due process. There was no retrial of the issues tried here; the question was only whether an *exequatur* shall be allowed or refused. After inquiry the judgment creditors were permitted to enforce their judgment against property of the judgment debtor in France. The extent to which it might be enforced and the restrictions which might be laid on the right accorded were entirely a matter of policy. Instead of adjusting the rights and interests of the parties at the time of judgment, as would be the case in this State (*Lightfoot* v. *Davis*, 198 N. Y. 261, 273; *Bloomquist* v. *Farson*, 222 id. 375), the courts there granted relief only for the amount of francs demanded in the pleading, regardless of the fact that at the time of judgment the sum so awarded was entirely inadequate to satisfy the judgment in Ulster county. The judgment creditors must, of course, be content with

what relief the courts there allowed. Their loss was increased through the delay resulting from the unreasonable resistance opposed by the debtor, and the fraudulent conveyance of her property. The use of the " law tricks " has thus become very profitable to her if she can finally pay off the legatees in the depreciated currency of France instead of the American dollars decreed by the surrogate.

As I have said, the recognition to be given to a foreign judgment depends entirely upon the policy of the court to which it is presented. In this State a liberal policy has been adopted. We recognize broad principles of comity and do not found our policy on questions of reciprocity. (*Johnston* v. *Compagnie Generale Transatlantique*, 242 N. Y. 381, 387; *Cowans* v. *Ticonderoga P. & P. Co.*, 219 App. Div. 120; 12 Cornell Law Quarterly, 62.) However, foreign judgments will not be given effect if contrary to the policy or prejudicial to the interests of the State, or if they do violence to what we deem the rights of our citizens. (*Anderson* v. *Haddon*, 33 Hun, 435, 440; *Gould* v. *Gould*, 235 N. Y. 14, 25.)

Generally speaking, the question of the effect of a foreign judgment has been considered in cases when an unsuccessful or dissatisfied litigant in a foreign court attempts to raise again the issues once tried. In such a case if there has been due process and a fair opportunity to be heard, resulting in a judgment uncorrupted by fraud or inequity, our courts will regard the determination of the foreign court as *res judicata*. (*Johnston* v. *Compagnie Generale Transatlantique, supra; Gould* v. *Gould, supra; Cowans* v. *Ticonderoga P. & P. Co., supra.*)

This case does not belong to that class. There was no suit in France on an original obligation. The rights of the parties had been determined here. There was no new judgment on the merits in the French court. The purpose of the judgment creditors was to seek aid in enforcing a judgment of our court against property in France. The rule is general in all countries that such aid will be given. It involved the bringing of an action for what amounted to leave to issue execution. It was a question not of substantive right but of procedure. It perhaps also partook eventually of the character of a judgment creditor's action. It resulted in obtaining liens on property which when liquidated satisfied the judgment only in part. The payment of the judgment under the law of France had no further effect than to release the judgment debtor and her property from further obligation in that country. The aid of the courts there was exhausted and we recognize the French judgment to that extent. That judgment made no decree concerning the judgment of the Surrogate's Court. It did not impair the right of that court to give further relief against an executrix who

had obtained ancillary letters and had failed to pay in full the sum directed by a decree. Strictly speaking, it was no judgment at all but a proceeding collateral to the judgment granted here, undertaken through comity to furnish the judgment creditors a remedy. By its terms it " made executory in France " the judgment obtained here. The question does not so much relate to the binding effect of the French judgment as it does to whether by the remedy pursued the creditors have been fully paid. It was the decree in Ulster county which determined the obligation. The proceedings in France aided in recovery of a part of the sum adjudged to be due. A part remains unpaid. Shall we say the remainder may not be paid because the effort to collect all failed?

It rests with the courts of this State to determine the policy as to whether the legatees are bound to accept in full satisfaction the sum collected, which is less than their due. This would be true even if the French courts had formally held that payment of any amount should satisfy in full the judgment in Ulster county. True comity would not impose conditions so harsh and unjust. As I have said, it would constitute rather strange notions of fiduciary responsibility if by the means detailed an executrix could escape liability. Under these facts we hold she has not.

The release-receipt was evidently such as the French practice permitted. It lacks the brevity and simplicity of our own satisfaction. It contains many recitals of the history of the litigation, the levies made in France, the statement of the account and interest, the notice to account before the notary and to receive payment " under the reservations laid down by Me. Lucas " (counsel for the judgment debtor); and the payment of money " duly counted and delivered in the presence of the undersigned notary." Then appear what are called " reservations," as follows:

" It being expressly specified that the said release final with regard to its effect on all the property and securities which may exist in France, is not given except under the most express reservations of all audits, accounts and final judgments which may exist in America and of all sums which may be owing by Madame the widow de Gasquet James to Mr. Georges de Gasquet James by virtue of other debts and judicial decisions. * * *

" On his part Me. Raoult in the name of Mme. de Gasquet James declares that he herewith reserves full right to object to the exactness of the account stated by Mme. de la Mettrie and M. de Gasquet James, since this account shows various errors of calculation which Mme. de Gasquet James intends to have rectified later on as well as such other errors or omissions which she may further discover.

" Me. Raoult herewith and now makes special protest against the fixing of the interest at six per cent since the legal interest is only five per cent and demands furthermore that the legal tax of the above mentioned expenses be fixed within a fortnight, and further makes protest against the amounts stated to have been received in America.   *   *   * "

Then follows a part called " satisfaction " which reads in part: " By reason of the preceding payment Mme. de la Mettrie and M. de Gasquet James in waiving all their rights, actions, liens and hypothecations, acknowledge pure and simple satisfaction and consent to the entire and final cancellation of all inscriptions and transcriptions of levy and of notice of levy upon the real property owned by Mme. de Gasquet James in France and especially *   *   * [here follows the description of certain properties of Mme. James theretofore levied on, and continuing]: They consent to the discharge of the Conservators who will make these cancellations."

It seems reasonably clear that the purpose of the judgment debtor was to relieve her property of liens and very likely save herself the cost of judicial sales by paying a sum in francs and winding up the French litigation. In so doing her attorney was at pains to give notice that payments would be made under reservations and in the release to leave open the question of the accuracy of the account for further rectification and to question the rate of interest. It is not clear whether she intended to do that in some further proceeding in France or to raise the question when adjusting her final accounts in the Ulster County Surrogate's Court. On the other hand, it is equally clear that the judgment creditors were attempting to preserve their rights in the State of New York and only granted a satisfaction as to the property levied on in France. No doubt Mme. James could have obtained satisfaction of the French judgment by paying the money into court. In that case she would have had to pay the amount of the judgment without question and her reservations and protests would have been of no avail then or thereafter.

While the proceeding adopted seems to us somewhat unusual, it doubtless was in accordance with the practice of that country. So no doubt the reservations were valid there, for the parties were represented by counsel before a tribunal given some sort of jurisdiction over the proceeding. In fact, the expert opinion is that such reservations are sanctioned by French practice. It seems unlikely, under such circumstances, that words having no legal meaning or effect and constituting a mere gesture would be inserted in a solemn instrument to be filed as discharging the French judgment. I

see no reason why the executrix might not desire to reserve on her accounting in the Surrogate's Court the question of overpayment of interest or other sums paid through mistake; and in view of the failure of the creditors to receive satisfaction in full in France, that they for like reasons might stipulate that they should be bound no further than as to their rights in France. I think we may give effect to these stipulations. It is not unusual in satisfying a judgment to make certain express reservations covenanting with one of two joint debtors that on payment of a certain sum he will not be further liable, while retaining the right to proceed against another. (*Marx* v. *Jones*, 36 Hun, 290; *Mecum* v. *Becker*, 164 App. Div. 852; affd., 215 N. Y. 691; 7 Halsbury's Laws of England, 455.) This does not differ in principle from the release of certain property from the lien of the judgment, retaining the right to proceed against other property as it may be discovered. Such a release voluntarily made or arising by operation of law, does not prevent enforcement against other property. (*Scott* v. *Mead*, 37 Fed. 865; *Peck* v. *Tiffany*, 2 N. Y. 451; *United States* v. *Dashiel*, 3 Wall. 688; 34 C. J. 629, 721, and cases cited.) A release should be given effect according to the intention of the parties and the justice of the case. (*Whittemore* v. *Judd Linseed & Sperm Oil Co.*, 124 N. Y. 565, 574.) And still further we have the principle that officers of the court acting under its direction may not so profit by " law tricks " that they may discharge their obligations of a fiduciary nature by payment of a sum much less than they owe. It is argued that had the franc advanced in value the judgment creditors would have made a profit. I entertain no doubt that the surrogate would have power on final settlement to credit the executrix with the excess payment and direct its return from the legatees. The decree was for the payment of money of fixed value, not for delivery of specific property (Surrogate's Court Act, § 268), where increment or decrease of value might be anticipated.

For the reasons stated the decree and orders should be reversed on the law and the judgments be declared valid to the extent that they remain unpaid, with ten dollars costs and disbursements against the executrix.

VAN KIRK, HINMAN and WHITMYER, JJ., concur; COCHRANE, P. J., dissents.

Decree and orders reversed on the law and judgments declared valid to the extent that they may remain unpaid, with ten dollars costs and disbursements against the executrix.