OPINION OF THE COURT
Arthur S. Hirsch, J.
The parties herein were married in France in 1959. They moved to Israel thereafter, where two children were born. In 1962, plaintiff wife applied to the Rabbinical Court, which by Israeli State law has the exclusive jurisdiction in matters of marriage and divorce of Jewish residents in Israel. The defendant, at that time, was a citizen and resident of Israel. Both parties appeared before the court for a hearing, each represented by counsel.
During their appearance in court, the parties entered into an agreement dated July 26, 1962, which was confirmed and became the order of that court. The agreement provided, among other things, that the parties would live separate and apart for a period of six months (under certain conditions not relevant to the instant motion). It was further stipulated that “if at the end of the separation period, the wife will demand it, the husband agrees to give his wife [a] divorce and the wife agrees to receive the divorce from her husband.” The husband was not to leave the country during the separation period, and until after the divorce proceeding was completed. After the termination of the six-month period in 1963, the wife did renew her *727 request for a divorce. Again, in accordance with Israeli procedure, the parties appeared before the Rabbinical Court. The case was adjourned for one month, the prohibition against the husband’s leaving the country continuing in effect. Despite the court-ordered prohibition, the husband left Israel for parts unknown. Since 1963, husband defendant has not supported either the wife, plaintiff herein, or his children, and he has since become a citizen of the United States, residing in Brooklyn, New York. The wife eventually located his whereabouts.
On November 1, 1979, the Rabbinical Court for the District of Tel Aviv issued an order directing the husband to give the wife a divorce in accordance with Rabbinical law.
Plaintiff, a resident of Israel, has initiated an action for divorce in this country and county, the defendant’s place of residence. Her third cause of action states that the Israeli order of November, 1979 is a final order of that court. Plaintiff, in the instant motion, moves for summary judgment on the third cause of action, asking that this court, under the doctrine of comity, treat the Israeli decree as a New York decree.
Defendant cross-moves to dismiss the cause of action on the ground that the parties’ matrimonial matter is within the exclusive jurisdiction of a Rabbinical Court, a court without similar jurisdiction in New York State, a court that in its own country does not have power to enforce its decrees. Consequently, defendant argues, the doctrine of comity cannot be applied.
It is undisputed that Israeli law provides that the Rabbinical Court has exclusive jurisdiction on matters of marriage and divorce. As such, it is an official court of a foreign State and cannot be compared with Rabbinical Courts which exist and function in the diaspora. The Jewish law followed in Israel is the law adhered to by practicing Jews throughout the world. Civil divorce obtained in the country in which Jews reside does not effect a Jew’s marital status under Jewish law. Unless a bill of divorcement called a “get pitturin” or simply a “get” is given to the wife by the husband, the parties are prohibited from marrying again.
*728 Unlike other systems of law, in which the divorce derives solely from a decree of a court, Jewish law requires the physical as well as spiritual act of the parties to the marriage. The husband must have a “get” prepared, written in a prescribed manner, which he presents to his spouse. She, in turn, must be willing to accept it. Without both conditions, the divorce is not valid. In the absence of an agreement to divorce, however, either party may petition the Rabbinical Court to decide whether or on what terms one party may be obligated to give or the other to accept a “get”. The decision is dependent on the existence of certain grounds recognized by law as confirming a right to either spouse to demand a divorce (The Principles of Jewish Law, pp 414-424 [M. Elon, ed], Encyclopaedia Judaica [1975]).
It is by way of the latter procedure that plaintiff herein, on grounds not revealed in the instant motion, brought the matter of divorce before the Israeli court.
The separation agreement/stipulation entered into in the Israeli court, requiring a cooling off period of six months, reflects the attitude of the Rabbinical Court, giving the parties every opportunity to turn back from terminating even those marriages that appear to be incapable of redemption (Rubin v Rubin, 75 Misc 2d 776, 780). The wife’s determination, after an extended separation, to be divorced, indicates that to her the marriage was dead. Unfortunately, the husband’s willful refusal to honor the agreement and court order prevented the proper religious procedural interment of the marriage.
DOCTRINE OF COMITY
The court decree issued approximately 17 years after the initial proceeding, ordering the defendant to deliver to his wife a bill of divorcement, is not in any sense an interlocutory order.
Defendant, taking the position that the subject order was not a final order, argues that matrimonial orders are more readily prone to modification motions and are thus not absolutely entitled to comity recognition. The argument is not on point. Matrimonial decrees that provide for support or alimony on frequent occasions are subject to modifica *729 tion motions or to reopening for various reasons. The subject order, while evolving from a matrimonial action, does not refer to support or alimony, but directs a party to perform a certain act, which does not undermine the finality of the order. It is comparable in nature to a final judgment in our courts directing one party to pay a sum of money or to sign over a deed to his or her spouse.
Defendant’s contention that the Rabbinical Court has no power to enforce its own orders is belied by defendant’s admission that he left Israel in 1963 when he was informed by counsel that he would be imprisoned if he refused to comply with the agreement confirmed into an order. The technical means by which a foreign court system implements and enforces its orders does not have to emulate our own system.
It is conceded the court that issued the order has jurisdiction over the subject matter. Jurisdiction in personam was acquired with the appearance of both parties. The issue of jurisdiction having been resolved, the remaining bars to comity in this State are showing that the judgment was fraudulently obtained (Tamimi v Tamimi, 38 AD2d 197) or that it was offensive to our public policy (Matter of James, 221 App Div 321, 325), neither of which is claimed by defendant.
Defendant’s additional argument that reciprocity must be a factor under the doctrine of comity is not well founded. While it is true that the State of Israel does not recognize any civil divorce as being determinative of the marital status of its Jewish residents, New York State has for some time adopted a liberal policy of recognizing foreign judgments through comity, ignoring the doctrine of reciprocity (Johnston v Compagnie Generale Transatlantique, 242 NY 381, 384; Matter of James, supra).
A right obtained and validated through legal procedure in a foreign jurisdiction gives rise to an obligation which follows the person and may be enforced wherever that person may be found (Johnston v Compagnie Generale Transatlantique, supra; Louks v Standard Oil Co. of N.Y., 224 NY 99, 110). Under this rationale, the courts will enforce a foreign right unless enforcement is contra to our law (Mertz v Mertz, 271 NY 466).
*730 CROSS MOTION TO DISMISS
Plaintiff’s first cause of action is based on abandonment. Her second cause of action claims the parties entered into a valid separation agreement, confirmed by a foreign court into a decree that may be converted into a judgment of divorce pursuant to subdivision (5) of section 170 of the Domestic Relations Law.
To prove abandonment, the conduct of a spouse must be shown to be unjustified and without consent of the other spouse. Defendant claims that he could not have “abandoned” plaintiff after agreeing to a separation agreement. The facts indicate otherwise. The agreement to separate was for a six-month period, after which the defendant fled from the court’s jurisdiction to a foreign country, leaving the wife and children behind and unsupported. It is graphically clear that plaintiff wife did not want nor consent to her husband’s exodus from Israel while the divorce action was pending. Nor can defendant claim that disobedience of a court order can be justified. The husband’s conduct is indeed a classic example of abandonment.
Defendant is correct in stating that plaintiff’s first and second causes of action are inconsistent, but this is not contra to statutory pleading requirements (CPLR 3014). Subdivision (5) of section 170 of the Domestic Relations Law provides for the so-called conversion divorce, whereby an action for divorce may be maintained oh grounds that the parties have lived separate and apart pursuant to a written agreement that can be recorded and that plaintiff has complied with its terms. These conditions are not dissimilar to the circumstances arising in the instant motion. The separation agreement was executed 19 years ago. The parties have lived separate and apart since that time. The agreement was court confirmed and became a record kept by the court in Israel.
Defendant further argues that the agreement is in violation of section 5-311 of the General Obligations Law. To be violative of that statute, it must be shown that the agreement offered inducement to a spouse to end the marriage, usually with a promise of a larger sum of money than would be realized by the recalcitrant spouse if the action *731 were litigated (Matter of Rhinelander, 290 NY 31, 37). This principle obviously cannot be applied to the instant situation. Furthermore, and controlling, is the fact that the agreement, confirmed by a competent court, was an acceptable separation agreement under Israeli law. New York courts have applied subdivision (5) of section 170, promulgated in 1966, to foreign decrees, which have the same effect as a New York separation decree (Harris v Harris, 36 AD2d 594), and have given retroactive effect to pre-1966 decrees (Gleason v Gleason, 26 NY2d 28). The separation agreement, which was confirmed and became an order of the court in 1962, is a valid basis to maintain a conversion action. Accordingly, defendant’s motion to dismiss the complaint is denied.
It is the understanding of the court that plaintiff, who is not a citizen or resident of the United States, would in no way benefit from obtaining a New York State divorce either on grounds of abandonment or pursuant to subdivision (5) of section 170 of the Domestic Relations Law. As indicated, the State of Israel, where she is domiciled, does not recognize a civil divorce under any circumstances and plaintiff would not be free to remarry if she is so inclined. It is probably for this reason that plaintiff did not move for summary judgment on her first and second causes of action. As to her motion regarding the third cause of action, the court finds the order of the Israeli court dated November 1, 1979 jurisdictionally well founded, free from the taint of fraud and not contravening our public policy. This court will, under the principle of comity, recognize the Israeli decree and will enforce the directives therein.
Accordingly, plaintiff’s motion for summary judgment as to her third cause of action is granted. Defendant is ordered to schedule an appointment with the Rabbinical Council of America and he is to perform all ritual acts of the “get” ceremony in accordance with the directions of the Rabbinical Court.
Plaintiff may submit a motion for counsel fees after she has obtained a divorce.