ROBERT D. JOHNSTON, as Surviving Partner of the Firm of JAMES RISK et al., Respondent, *v.* COMPAGNIE GENERALE TRANSATLANTIQUE, Appellant.

Comity — former adjudication — stare decisis — carriers — action against carrier to recover for wrongful delivery of goods — conclusiveness of former adjudication by French court — courts of this State not bound to follow ruling of United States Supreme Court that judgments rendered in France are not conclusive in the United States.

1. The complaint in an action to recover for an alleged wrongful delivery of goods by a steamship carrier should have been dismissed where defendant set up as a defense an adjudication of the Tribunal of Commerce at Paris in favor of defendant upon the same cause of action, in an action brought by plaintiff thereon, established on the trial that the French judgment was the final judgment on the merits of a court of competent jurisdiction, and no attempt was made to impeach it for fraud.

2. It cannot be successfully argued that questions of international relations and the comity of nations are to be determined by the Supreme Court of the United States; that there is no such thing as comity of nations between the State of New York and the Republic of France and that, therefore, this court is bound by a former decision of the Supreme Court laying down the collateral and qualifying rule that in principles of comity judgments rendered in France, by whose laws judgments of the ·United States courts are reviewable on their merits, are not conclusive when sued upon in the United States and are only *prima facie* evidence of the justice of plaintiff's claim. The question is one of private rather than public international law, of private right rather than public relations and our courts will recognize private rights acquired under foreign laws and the sufficiency of the evidence establishing such rights. A right acquired under a foreign judgment may be established in this State without reference to the rules of evidence laid down by the courts of the United States. (*Dunstan* v. *Higgins*, 138 N. Y. 70, followed; *Hilton* v. *Guyot*, 159 U. S. 113, limited and distinguished.)

*Johnston* v. *Compagnie Generale Transatlantiquè*, 214 App. Div. 775, reversed.

(Argued March 30, 1926; decided May 4, 1926.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered June 23, 1925, unanimously affirming a judgment in favor of plaintiff entered upon a verdict directed by the court.

*Joseph P. Nolan, Edward J. Garity* and *Arthur K. Kuhn* for appellant. A party may not successfully contest the terms of a judgment of a French court, rendered in an action in a French court which such party initiated. (*Hilton* v. *Guyot*, 159 U. S. 170; *Ricardo* v. *Garcias*, 12 Cl. & F. 368; *The Griefswald*, Swabey, 430; *Barber* v. *Lamb*, 8 C. B. [N. S.] 95; *Lea* v. *Deakin*, 11 Biss. 23; *Gould* v. *Gould*, 235 N. Y. 14; *Dunstan* v. *Higgins*, 138 N. Y. 70; Bigelow on Estoppel [5th ed.], 307; Story's Conflict of Laws, § 607; *Konitzky* v. *Meyer*, 49 N. Y. 571.) The judgment of the French court is conclusive of the merits of this action. (*Hubbard* v.

*Hubbard,* 228 N. Y. 81; *Gould* v. *Gould,* 235 N. Y. 14; *Lazier* v. *Westcott,* 26 N. Y. 146; *Dunstan* v. *Higgins,* 138 N. Y. 70.)

*Sol. Boneparth, Moses Feltenstein, Abraham Rosenstein* and *Harry A. Dubinsky* for respondent.   Plaintiff may sue in our courts on a claim *in personam* although his suit on the claim in the French courts resulted in a judgment against him.   (*Hilton* v. *Guyot,* 42 Fed. Rep. 249; 159 U. S. 113.)   The judgment of the French court did not so bind respondent as to prevent him from trying this action upon its merits.   (*Hilton* v. *Guyot,* 159 U. S. 210; *Gould* v. *Gould,* 201 App. Div. 127, 130; Westlake on Private Int. Law [5th ed. 1912], 429; Story's Conflict of Laws, § 617; *Burnham* v. *Webster,* 1 Woodb. & Min. 172; 2 Kent's Comm. 120; *Grubel* v. *Nassauer,* 210 N. Y. 149; *McEwan* v. *Zimmerman,* 38 Mich. 765).

POUND, J..   The controversy arises over an alleged wrongful delivery of goods by the defendant, a steamship carrier, which is a foreign corporation organized under the laws of the Republic of France.   Plaintiff is the assignee of triplicate bills of lading issued in New York, under which one Frank E. Webb shipped the goods from New York to Havre.   Defendant delivered the goods to other parties upon presentation of a non-negotiable copy of the bill of lading which Webb retained as an office copy not used for presentation to secure the delivery of the goods.

Defendant set up as a defense an adjudication of the Tribunal of Commerce at Paris in favor of defendant upon the same cause of action, in an action brought by plaintiff thereon and established on the trial that the French judgment was the final judgment on the merits of a court of competent jurisdiction.   No attempt was made to impeach it for fraud.

The courts below refused to give effect to the French

judgment on the authority of *Hilton* v. *Guyot* (159 U. S. 113), decided in 1895, for the reason that by the law of France no foreign judgment can be rendered executory in France without a review of the judgment *au fond*, that is, of the whole merits of the cause of action on which the judgment rests; that for want of reciprocity the courts of this State are not bound by the judgment but will, in their discretion, examine the rights of the parties as fully and absolutely as if the matter had never been submitted to the French court; and that on the merits the French judgment was contrary to the principles of our law and should be disregarded.

The New York rule was stated in *Dunstan* v. *Higgins* (138 N. Y. 70), decided in 1893, as follows:

" It is the settled law of this State that a foreign judgment is conclusive upon the merits. It can be impeached only by proof that the court in which it was rendered had not jurisdiction of the subject matter of the action or of the person of the defendant, or that it was procured by means of fraud. * * * The judgments of the courts of a sister State are entitled to full faith and credit in the courts of the other States under the Constitution of the United States, but effect is given to the judgments of the courts of foreign countries by the comity of nations which is part of our municipal law. The refusal of the foreign court to allow a commission to examine witnesses here does not affect the conclusive character of the judgment. Such applications are generally within the discretion of the court to which they are addressed and then a refusal to grant them does not constitute even a legal error subject to review. But even if it appeared in this case, as it does not, that some legal right of the defendant was denied in refusing the application that would not affect the validity or conclusive nature of the judgment, so long as it stood unreversed and not set aside. Legal errors committed upon the trial or during the progress of the cause may be corrected by appeal or

motion to the proper court, but they furnish no defense to an action upon the judgment itself. Where a party is sued in a foreign country, upon a contract made there, he is subject to the procedure of the court in which the action is pending, and must resort to it for the purpose of his defense, if he has any, and any error committed must be reviewed or corrected in the usual way. So long as he has the benefit of such rules and regulations as have been adopted or are in use for the ordinary administration of justice among the citizens or subjects of the country he cannot complain, and justice is not denied to him. The presumption is that the rights and liability of the defendant have been determined according to the law and procedure of the country where the judgment was rendered."

This is the modern English doctrine and the doctrine of some, at least, of our State courts. (*Lazier* v. *Westcott*, 26 N. Y. 146; *Konitzky* v. *Meyer*, 49 N. Y. 571, 576; *MacDonald* v. *Grand Trunk Ry. Co.*, 71 N. H. 448; *Nouvion* v. *Freeman*, 15 App. Cas. 1, 9; *Godard* v. *Gray*, L. R. 6 Q. B. 139–148) and has the approval of recent text-book writers. (3 Freeman on Judgments, 3069.)

In *Hilton* v. *Guyot* the action was brought on a foreign judgment, rendered by the same court in which the judgment herein was rendered. The opinion of Judge GRAY, after an exhaustive review of the subject, while fully recognizing the general rule as stated, lays down the collateral and qualifying rule that on principles of comity judgments rendered in France, by whose laws judgments of the United States courts are reviewable on their merits, are not conclusive when sued upon in the United States and are only *prima facie* evidence of the justice of plaintiff's claim. FULLER, Ch. J., wrote a dissenting opinion in which HARLAN, BREWER and JACKSON, JJ., concurred. He says (p. 233):

" In any aspect, it is difficult to see why rights acquired

under foreign judgments do not belong to the category of private rights acquired under foreign laws. Now the rule is universal in this country that private rights acquired under the laws of foreign states will be respected and enforced in our courts unless contrary to the policy or prejudicial to the interests of the state where this is sought to be done; and although the source of this rule may have been the comity characterizing the intercourse between nations, it prevails today by its own strength, and the right to the application of the law to which the particular transaction is subject to a juridical right."

No case has previously arisen in this State which necessarily involved the consideration of *Hilton* v. *Guyot*. The question here presented may be regarded as an open one in this court. CULLEN, Ch. J., said in *Grubel* v. *Nassauer* (210 N. Y. 149, 151) (by way of dictum, for the question was as to the jurisdiction of the foreign court): " The judgments of the courts of no country have, necessarily, any extraterritorial effect. When they are enforced in a foreign country, which as a rule they are to a certain extent, it is solely by virtue of comity. The elaborate review of this subject by the Supreme Court of the United States in *Hilton* v. *Guyot* renders further discussion unnecessary." Very recently in *Gould* v. *Gould* (235 N. Y. 14) it was said that *Hilton* v. *Guyot* did not apply in a matrimonial action where both parties although resident in France were said to be domiciled in the State of New York. Full force and effect was given to the French decree. The court in the end, however, disposed of the case in the exercise of discretion. It seems illogical to leave the effect of a foreign judgment *in personam* in individual cases to the discretion of the court.

To what extent is this court bound by *Hilton* v. *Guyot?* It is argued with some force that questions of international relations and the comity of nations are to be determined by the Supreme Court of the United States; that there

is no such thing as comity of nations between the State of New York and the Republic of France and that the decision in *Hilton* v. *Guyot* is controlling as a statement of the law. But the question is one of private rather than public international law, of private right rather than public relations and our courts will recognize private rights acquired under foreign laws and the sufficiency of the evidence establishing such rights. A right acquired under a foreign judgment may be established in this State without reference to the rules of evidence laid down by the courts of the United States. Comity is not a rule of law, but it is a rule of " practice, convenience and expediency. It is something more than mere courtesy, which implies only deference to the opinion of others, since it has a substantial value in securing uniformity of decision, and discouraging repeated litigation of the same question." (BROWN, J., in *Mast, Foos & Co.* v. *Stover Mfg. Co.*, 177 U. S. 485, 488.) It, therefore, rests, not on the basis of reciprocity, but rather upon the persuasiveness of the foreign judgment. (*Loucks* v. *Standard Oil Co.*, 224 N. Y. 99, 111.) When the whole of the facts appear to have been inquired into by the French courts, judicially, honestly and with full jurisdiction and with the intention to arrive at the right conclusion and when they have heard the facts and come to a conclusion, it should no longer be open to the party invoking the foreign court against a resident of France to ask the American court to sit as a court of appeal from that which gave the judgment. I reach the conclusion that this court is not bound to follow the *Hilton* case and reverse its previous rulings.

The reasoning of the learned justice who wrote the prevailing opinion is, however, entitled to most respectful consideration. Nor need we disregard the authority of the *Hilton* case. We may limit it to the questions actually decided. Mr. Justice GRAY says (p. 228): " In England, and in the Colonies subject to the law of England, the

fraud alleged in its [the French judgment] procurement would be a sufficient ground for disregarding it." As this State has always permitted foreign judgments to be impeached for fraud, the preceding fifty-four pages of the opinion may be regarded as magnificent dictum, entitled to the utmost respect, but not determinative of the question.

Furthermore, the learned justice limits his discussion (pp. 170-171) to the effect which a judgment, purely executory, rendered in favor of a citizen or resident of France in a suit there brought by him against a citizen of the United States may be entitled to in an action thereon in the United States. Here the plaintiff was the actor in the French court. After having sought the jurisdiction of the foreign tribunal, brought the defendant into that court and litigated the question there, he now seeks to impeach the judgment rendered against him. The principles of comity should give conclusiveness to such a judgment as a bar to the present action. Dicey on Conflict of Laws (3d ed. p. 455) states separately the rule as to foreign judgments pleaded as a defense, as follows: " A valid foreign judgment *in personam* if it is final and conclusive on the merits (but not otherwise) is a good defense to an action for the same matter when either (1) the judgment was in favor of defendant or (2) the judgment· in favor of the plaintiff has been satisfied." The law of the State of New York remains unchanged and the French judgment should be given full faith and credit.

The judgments should be reversed and the complaint dismissed, with costs in all courts.

HISCOCK, Ch. J., CARDOZO, McLAUGHLIN, CRANE, ANDREWS and LEHMAN, JJ., concur.

Judgments reversed, etc.