BERNARDO PONCE, substituted by his heirs ELENA MONZÓN GONZÁLEZ, WIDOW OF PONCE ET AL., Plaintiffs and Appellees, *v.* F. BADRENA E HIJOS, INC., Defendant and Appellant.

No. 10598.    Argued November 5, 1952.—Decided December 23, 1952.

*Juan Enrique Géigel, Guillermo Silva* and *Luis F. Cuyar,* for
appellant. *Rafael B. Pérez Mercado* for *Elena Monzón Gon-*
*zález, widow of Ponce,* appellee. *Antonio Rivera Brenes* and
*Fernando Fornaris, Jr.,* for appellees.

MR. JUSTICE ORTIZ delivered the opinion of the Court.

In the former District Court of Puerto Rico, San Juan
Section, Bernardo Ponce, domiciled in Argentina,[1] filed a suit
for the recovery of a judgment against the concern F. Ba-
drena e Hijo, Inc., a corporation duly organized in Puerto
Rico. In said petition it is alleged that plaintiff started pro-
ceedings against the defendant in a court of the city of Bue-
nos Aires, Argentine Republic, for the collection of mer-
cantile commissions and expenses incurred in his business
efforts on behalf of the defendant. The Argentine Court
rendered judgment sustaining the complaint and ordering the
defendant to pay the plaintiff the amount of the commissions
collected, the expenses incurred by the plaintiff, interest on
the amount of the judgment, costs and attorney's fees. As
a prerequisite for the establishment of the total amount of
the damages and costs, the court states that the amount
should be fixed by a commission of experts in accordance with
the Code of Procedure in force in the city of Buenos Aires.
It is further alleged in the complaint that the defendant was
duly represented in the Argentine courts by three attorneys
who were duly authorized by power of attorney transcribed
in the complaint; that the representatives of the defendant
took an appeal from said judgment to the Chamber of Com-
merce for Appeals in the city of Buenos Aires and it was
affirmed in all its parts by decision of July 7, 1947; that
by virtue. of said decision the defendant, by power of attor-
ney, increased the powers of the Argentine lawyers to the
effect that they would be able to appoint a third arbitrator
in case of disagreement, pursuant to the judgment rendered;
that the three arbitrators duly appointed finally rendered a

---

[1] During the judicial proceeding in the lower court, Bernardo Ponce
died and he has been substituted by his heirs, as plaintiffs.

decree which established that the defendant had to pay the amount of 50,504.37 *"pesos"* to the plaintiff, in Argentine currency, and the expenses incurred by the plaintiff in the amount of 2,775.08 *"pesos,"* Argentine currency, the aforesaid sums added to the costs, expenses, interest, and attorney's fees for the plaintiff and the fees for the arbitrators, amounting to the total sum of 78,120.20 *"pesos,"* Argentine currency.[2] It is finally alleged in the complaint that the Argentine judgment is final, executory and unappealable and had not been paid either wholly or partially by the defendant, and for that reason the lower court was petitioned to render judgment ordering the defendant to pay the aforesaid amount, with the corresponding costs, interest, expenses and attorney's fees.

The defendant made a personal appearance and filed a motion to dismiss the complaint which was denied. After several preliminary proceedings the defendant filed an amended answer which admits that the Argentine court rendered the judgment to which the complaint refers, but denies its validity, alleging that the Argentine court lacked jurisdiction when it rendered the judgment, contrary to the provision of § 4, subdivision 4 of the Code of Civil Procedure and Commerce for the Federal Capital and the National Courts of the Argentine Republic. The defendant admits that the authority to which the complaint makes reference was conferred on the Argentine lawyers, but it denies the power and jurisdiction of the Argentine court to render the judgment. The defendant also admits in its answer that part of the complaint which refers to the procedure and the arbitrator's decree. However, the defendant refuses to acknowledge its validity due to their previous allegation of lack of jurisdiction of the Argentine court. As special defenses the defendant alleged the following:

---

[2] The judgment of the San Juan Court determines the equivalent in American currency of the amount to be paid by the defendant to the plaintiff, that is, $16,411.80, based on the rate of exchange prevailing on the date of the filing of the complaint which started the case at bar.

That the defendant corporation has always been domiciled in Puerto Rico, being a citizen of the United States of America; that, according to the afore-mentioned Code of Commerce and Civil Procedure, jurisdiction and venue to file personal actions lie at the place agreed for the performance of the obligation, and in the absence of such an agreement, at the plaintiff's option, the defendant's domicile or the place where the contract was entered into as long as the defendant is present even though fortuitously; that in this case the parties did not agree that the contract was to be performed in the city of Buenos Aires, and that therefore, the only court with venue to decide the case was the court of the city of San Juan; and that even assuming the jurisdiction and venue of the Argentine court, said court committed manifest error of fact and of law since the judgment was based on the existence of a contract for commissions, based on performances of the plaintiff as agent of the defendant in regard to the buying of hung beef in Montevideo, Buenos Aires and in some cities of Brazil, when actually the transaction under consideration was a sales contract, the plaintiff being the vendor and the defendant the purchaser.

In the amended answer filed in the case at bar it is further stated that in the answer filed in the Argentine court a series of facts was alleged referring to communications by cable and by letters between both parties, which, according to the defendant, imply that what actually existed was a sales contract and not one based on commissions; that the decree of the Argentine court was to the effect that "the juridical characterization which corresponds to the relation between the parties and which gave rise to this litigation is that of a commission contract pursuant to chapter two of title two of the second book of the Code of Commerce." It is alleged in the amended answer presented in the case at bar that the conclusions reached by the Argentine court in regard to the fact that the plaintiff acted as a commission agent of the defendant is manifestly erroneous and contrary to the evidence in-

troduced before the afore-mentioned court, since, as alleged from the evidence, it clearly appears that the contract held by both parties was one for the sale of hung beef and not a commission contract. Furthermore, it is alleged in the amended answer that the Argentine court's conclusion to the effect that the transaction for the purchase and sale of hung beef failed because of the defendant's delay in obtaining a credit which was requested by the plaintiff, is completely erroneous and contrary to evidence, inasmuch as according to the defendant the evidence showed that the latter was not to be blamed for the failure of the transaction for the purchase of the hung beef. Defendant alleges that when the Argentine courts rendered judgment they failed to consider the defenses alleged by the defendant nor did they evaluate the evidence and they limited themselves to enter a judgment in favor of the plaintiff due to his status as an Argentine citizen. Defendant also alleges that in the courts of Puerto Rico the Argentine judgment is null and void since there is no treaty between the United States of America and the Argentine Republic by virtue of which judgment rendered by the courts of justice of the Argentine Republic or vice versa are recognized as valid in the United States or in Puerto Rico. Finally, the defendant alleges that the Argentine judgment is null and void in Puerto Rico since there is no reciprocity between the United States of America and the Argentine Republic or Puerto Rico and the Argentine Republic as to the recognition in the United States or in Puerto Rico of judgments rendered by the Argentine courts or vice versa.

The hearing of this case was held on May 19, 1950. The only evidence introduced by the plaintiff, without objection of the defendant, was the record of the judgment entered by the Argentine court, which contained: (1) The complaint filed in Buenos Aires; (2) Challenge to the venue of the Buenos Aires court; (3) Answer to the complaint; (4) Order in regard to venue; (5) Judgment of the court of first instance; (6) Judgment of the court of appeals' decision on

motion challenging the venue of the trial court and the conclusiveness of the judgment; (7) The arbitrators' decrees in regard to the amount of reimbursement claimed; and (8) Petition and decision in regard to the costs, expenses and attorney's and expert's fees, and other disbursements. The plaintiff also introduced in evidence, without objection from the defendant, various documents, including: (1) A printed volume which includes the Code of Commerce and Civil Procedure in force at the city of Buenos Aires, attached therewith are sworn statements of attorneys from Buenos Aires, duly authenticated, and affidavit by Dr. Santos P. Amadeo, stating that the aforesaid volume contains the Acts and Laws in force in the aforesaid capital of the Argentine Republic and that it is recognized by the courts of justice of Buenos Aires as the written law of that jurisdiction; (2) Statement of two lawyers of the city of Buenos Aires stating that the judgments of the Court of Commerce are appealable to the Chamber of Commerce and that the decisions of the Chamber of Commerce are final, citing the applicable legal precepts included in the Civil and Commercial Codes, and (3) Sworn and subscribed statements of A. B. Falcone, banker and resident of San Juan, Puerto Rico, who is in charge of the department of foreign exchange of the National City Bank of New York, San Juan branch, certifying the exchange of the Argentine currency and that of the United States, on July 8, 1946, May 19, 1948 and August 13, 1948.

The defendant offered the following evidence which was admitted by the lower court over the plaintiff's objection: (1) Statements of two attorneys from Buenos Aires stating that according to the legal precepts of Argentina, which they cite, it is not possible to separate documents that form part of a judicial record, over the objection of one of the parties; (2) Declaration by deed issued by a notary public of Buenos Aires of cables and letters between the parties, attached to the record of the proceedings held at Buenos Aires. The aforesaid documents are all properly authenticated.

After having offered said evidence the defendant alleged that certain necessary evidence was lacking and petitioned for a continuance to produce it. On May 31, 1950 the continuance granted by the trial court to the defendant expired. On June 27, the defendant filed a motion alleging that it had obtained from the Secretary of the Chamber of Commerce of Buenos Aires an official certificate of the documents offered in evidence to the afore-mentioned court at the trial in Buenos Aires, that is, the same evidence offered at the hearing by testimony offered by a notary public of Buenos Aires, and moved the court to reopen the case to offer the afore-mentioned certificate in evidence. On September 25, 1950 a hearing was held to consider the defendant's motion requesting the reopening of the case. Defendant's motion was granted by the lower court and the new evidence was accepted. This evidence is the same as that offered at the previous hearing. However, it now bears the signature of the Secretary of the Court of Buenos Aires duly authenticated. On the same date, September 25, with leave of court, the plaintiff filed a motion which included a certificate of the Secretary of the Court of Buenos Aires, whose signature is legally verified, certifying that in addition to the evidence that was offered in compliance with the order, that is, the certification introduced by the defendant, there is also in the record additional documentary evidence that was considered by the Argentine court, but that was not included in the certificate offered by the defendant. That is, the defendant admitted in a motion to which we shall refer hereinafter, that the certificate introduced by the defendant to the lower court did not include all the evidence offered to the Argentine court, but it only included part of the evidence offered before the afore-mentioned court.

On December 8, 1950 the lower court rendered judgment sustaining the complaint. The defendant was ordered to pay plaintiff the amount of $16,411.80 in American currency, with legal interest at the rate of 6% per annum, since August

13, 1948, the date of the filing of the complaint, until its complete payment. The defendant was also ordered to pay all the costs incurred in the litigation in addition to $3,000 as attorney's fees. The lower court made the following findings of fact: that the Argentine judgment was properly proved; that the judgment had not been paid; that two attorneys and a solicitor were duly authorized by the defendant to represent it at the trial held in Argentina; that the afore-mentioned arbitration decree was rendered, and that, according to the prevailing rate of exchange at the time of the filing of the petition, the amount owed was $16,411.80  Furthermore, the lower court concluded that the certification of the Secretary of the Court of Buenos Aires, offered by the defendant, does not include all the evidence submitted and weighed by said court at the time of rendering the judgment whose execution is requested, as is shown by the judgment offered in evidence, which makes reference to documents not transcribed in the certification and as is also shown by the certification of the Secretray of the Court of Buenos Aires, offered by the plaintiff, which shows that the Argentine court received documentary evidence that is not included in the afore-mentioned certification offered by the defendant.

The lower court entered the following conclusions of law: that the Argentine judgment is admissible in evidence; that according to the Argentine law, which was offered in evidence, the judgment is unappealable and executory; that the judgment is valid and enforceable against the defendant in Puerto Rico; that, according to § 428 of the Code of Civil Procedure of Puerto Rico, the Argentine judgment is valid in Puerto Rico; that there is a presumption in favor of the jurisdiction of the Argentine court and the opposing evidence offered by the defendant was not sufficient to rebut it; that the evidence offered by the defendant is not enough to show that the Argentine court committed manifest error of fact or law since the certification offered by the defendant does not include all the evidence introduced before the afore-

mentioned court and therefore that the lower court could not determine whether the Argentine court arrived at the correct conclusions, nor was the lower court in a position to determine whether or not the interpretation given to the Argentine law by the courts of that country was correct. The trial court indicated that it is in the position of an appellate tribunal and that it must be put in the same position as that of the Argentine court as to the facts and the law applicable to the case. The lower court also concluded that the bases for the Argentine judgment are sustained by the findings of fact and of law and that the objections raised by the complaint filed in the San Juan Court had already been considered and dismissed by the Court of Appeals of Argentina, since they were not raised in the lower court, that is, that they constitute a change in the theory of the case; that the defendant made a voluntary appearance before the Argentine court, represented by two attorneys, with full opportunity for presenting its defenses as to fact and law, that the proceedings in the Argentine trial court comply with the fundamentals of due process, and that the defendant's action in appointing an arbitrator to determine the amount of damages should be considered as a recognition of the judgment rendered in Buenos Aires, the defendant being estopped from contesting the judgment.

The parties were notified of the judgment rendered by the Court of San Juan on December 13, 1950. On December 28 of the same year the defendant filed a motion called "Petition Requesting that the Defendant be Relieved from the Judgment Rendered Against It in this Case and for Reconsideration of the Decision." The plaintiff was not notified of this motion. The defendant alleges in its motion that the lower court failed to decide the questions of law presented by the defendant, due to the fact that all of the evidence offered to the Argentine Court was not offered to the San Juan Court. The motion of the defendant reads in part as follows: "The defendant admits and recognizes that, inasmuch

as all the evidence which was introduced in the Court of Commerce of Buenos Aires was not submitted to this Honorable Court, this Court is not in a position to pass on the correctness or incorrectness of the conclusions reached by the Court of Commerce of Buenos Aires, nor is it in a position to pass on the validity or sufficiency of the judgment rendered by said court." The defendant further alleges that, pursuant to § 292 of the Code of Civil Procedure of Puerto Rico and of Rule 60(b) of the Rules of Civil Procedure, and in the court's discretion, the defendant should be relieved from the judgment, and moves for reconsideration petitioning for an opportunity to introduce that evidence which was offered in Argentina but which was lacking in the lower court so that the court may consider all the evidence that was introduced in the Argentine court. Various facts in regard to telephone conversations and communications in writing between the attorneys of the defendant in Puerto Rico and one of the attorneys of the defendant in Argentina are alleged in the motion. They tend to show that counsel for defendant requested a complete transcript of all the documents offered by both parties in the Argentine court. The conversations and communications started on May 20, 1950 and the Argentine attorney encountered great difficulties in obtaining the certificate; on June 30, 1950 one of the attorneys of the defendant received a certificate which was later offered in evidence, but which proved insufficient; before the defendant offered that certificate in evidence, that is, before September 25, 1950, counsel for the defendant realized that the certificate which had been sent to them did not include a certification to the effect that the transcript was a complete record of the evidence presented to the Argentine court but they consider that this omission was due to an oversight on the part of the counsel for the defendant and proceeded on the theory that all the evidence was included in the certificate; on September 25, 1950, when they received a copy of the certificate offered

by plaintiff, counsel for the defendant realized that the aforesaid certificate offered by the defendant did not include all the documentary evidence in existence in the record of the case which took place in the Argentine court; that after filing their brief on November 1, 1950, counsel for the defendant proceeded anew to obtain from an Argentine attorney a new and complete certificate from the Secretary of the Argentine court which would include all the missing evidence and on December 20, 1950 said secretary issued a new certificate duly legalized and authenticated, which certificate was in possession of the counsel for the defendant at the time of the filing of the motion, that is to say, on December 28, 1950; that the new certificate shows that it includes all the evidence offered by both parties. The defendant states in its motion that it offers to the lower court the new certificate and then requests the trial court to set a date for a hearing for the admission in evidence of the official certificate of December 20, 1950, in order that the trial court may consider all the evidence that was submitted to the Argentine court, so that it may be in a position to decide the case on the merits. Finally, the defendant prays as follows:

"For the aforesaid reasons, the defendant, F. Badrena e Hijos, Inc., prays this Honorable Court to relieve the defendant from the judgment rendered against it in the case at bar and that it reconsider the judgment, declaring it ineffective, and allowing the defendant an opportunity to reopen the case for the sole purpose of introducing in evidence the official certificate of the Secretary of the Court of Commerce of Buenos Aires, dated December 20, 1950, in order that the court may be in a position to decide this case on the merits."

The motion of the defendant included various exhibits referring to the communications between the attorneys for the defendant and the aforesaid Argentine attorney, for the purpose of the issuance of a certificate as to all of the evidence introduced in the Argentine court.

On January 2, 1951, without a hearing, the lower court denied the defendant's motion, dated December 28, 1950. On January 12, 1951 the defendant filed in the lower court an appeal from the judgment rendered on December 8, 1950. The defendant has not appealed to this Court from the said order of January 2, 1951.

The defendant assigns the following errors:

"First Error: The Court of the Judicial District of San Juan committed an error of law in denying defendant's motion stating that the complaint fails to state a cause of action.

"Second Error: The lower court committed error and abused its discretion in denying the defendant's motion of December 8, 1950, requesting that it be relieved of the judgment rendered against it on the 8th day of the same month and year, and requesting a reconsideration of the judgment.

"Third Error: The lower court committed error in ordering the defendant-appellant to pay attorney's fees in the amount of three thousand dollars."

██ As the first error the defendant-appellant contends that the complaint does not state a cause of action. As we have seen, the complaint states that an Argentine court rendered a judgment ordering the defendant, the appellant herein, to pay a certain amount of money to the plaintiff, and requests the lower court to render a judgment ordering the payment of the amount due, in accordance with the foregoing judgment. Briefly, the appellant states that in the complaint it is not alleged that our courts are under the obligation to recognize the efficacy, validity and mandatory nature of an Argentine judgment by virtue of a treaty between the United States and the Argentine Republic, and, especially that it is not alleged in the complaint that the Argentine Republic recognizes judgments of the United States or Puerto Rico, which is a condition precedent, within the rule of reciprocity, for the recognition of the Argentine judgments by our courts, as was decided by the Supreme Court of the United States in *Hilton* v. *Guyot*, 159 U. S. 113.

Actually, in the afore-cited case, after a detailed discussion of the doctrine of recognition of foreign judgment,[3] it was held that if France does not recognize a foreign judgment, the courts (federal) of the United States should not recognize French judgment as conclusive in regard to the merits of the case, and that the principle of international comity is not applicable when there is no reciprocity.

The doctrine established in *Hilton* v. *Guyot, supra,* has been severely criticized. 2 Beale, *Treatise on the Conflict of Laws,* 1381, 1382, 1385 *et seq.;* 1 Beale, *Op Cit.,* 54; Goodrich, *Conflict of Laws,* 3rd ed., 606; 50 Columbia Law Review 783, 790, 793; *Status of Judgments Rendered Abroad;* 9 Harv. L. Rev. 430; 38 Harv. L. Rev. 638; 36 Yale Law Journal 542; 34 Yale Law Journal 549; 26 Col. L. Rev. 892; 12 Cornell Law Quarterly 62; 55 Mich. L. Rev. 70; *Johnston* v. *Compagnie Generale Transatlantique,* 242 N. Y. 381, 152 N. E. 121; *Cowens* v. *Ticonderoga Pulp & Paper Co.,* 127 Misc. 898, 217 N.Y.S. 647; *Coulborn* v. *Joseph,* 25 S. E. 2d 576. See also the Annotations in 46 A.L.R. 439, 450 and 148 A.L.R. 991, 997, where it is stated that the modern tendency in the United States is to recognize foreign judgments *in personam* as conclusive when they have been rendered on the merits in foreign courts with jurisdiction over the merits of a cause. The Restatement, Conflict of Laws, adopts a doctrine contrary to that expressed in *Hilton* v. *Guyot, supra.* See § 434, p. 517, commentary B: "A foreign money judgment will be enforced although the judgments of the forum are not enforced in the foreign state." A summary of the criticisms of the decision in the *Hilton* case, *supra,* are:

1. The foreign judgment creates private rights and obligations between persons and entities and the existence of

---

[3] The decision in *Hilton* v. *Guyot,* 159 U. S. 113, could have been made on the basis that the foreign judgment was obtained by fraud. For said reason, Judge Pound, of the Court of Appeals of New York stated, in *Johnston* v. *Compagnie Generale Transatlantique,* 242 N. Y. 381, 152 N. E. 121, that "the preceding fifty-four pages of the opinion may be regarded as magnificent dictum, entitled to the utmost respect, but not determinative of the question."

those rights and obligations should not be affected by concepts of international discourtesy.

2. The validity of a foreign judgment and of the system of laws of the country wherein the judgment has been rendered does not depend on the attitude of that country in regard to judgments of other States.

3. The doctrines of conflict of laws should be based on legislative provisions and not on abstract principles of courtesy.

4. The decision in regard to international courtesy should be formulated by the executive or legislative branches of the government and not by the judiciary, since the questions involved are not judicial but political.

5. In our modern world of interdependence between States, of rapid communications between countries, and of interchange of cultural and juridical views among the different States, to create walls and barriers to the judicial actions of civilized countries implies the existence of an unrealistic and obsolete attitude of incomprehension and intellectual isolation, especially when this attitude is due to the adoption of reprisals.

Independently of the intrinsic merits of the decision of the Supreme Court of the United States in the case of *Hilton* v. *Guyot, supra*, and independently of any question relative to its binding force on local issues as the ones involving issues of conflict of laws in regard to foreign judgments that create private rights between individuals, we believe and decide that the afore-cited case of *Hilton* v. *Guyot, supra*, is not applicable to the case at bar. The plaintiff offered in evidence a statute of the Argentine Republic which states that the Argentine courts must recognize and give effect to foreign judgments under certain conditions enumerated therein.[4] The

---

[4] Section 559 of the *Código de Procedimientos en Materia Civil y Comercial de la Capital Federal y Territorios Nacionales* states:

"Section 559. In the absence of treaties on the subject, foreign judgments are enforceable in the Province if they comply with the following requisites:

defendant did not object to this evidence. Although this was not alleged in the complaint, the latter must be considered as amended, even on appeal, by the evidence introduced without objection at the trial. *Martínez* v. *Torres*, 64 P.R.R. 42; *Viñas* v. *Hernández*, 60 P.R.R. 269; *Ruberté* v. *American RR*, 52 P.R.R. 360; *Maniscalco & Nuccio* v. *Sancho Bonet, Treas.*, 51 P.R.R. 499; *Portela* v. *Saldaña*, 39 P.R.R. 490; *D'Azizi* v. *Alcaraz*, 40 P.R.R. 468; *People* v. *Heirs of Valdés*, 31 P.R.R. 213. The facts enumerated by the Argentine statute as to the requisites for the recognition of a, foreign judgment are very reasonable, and an absence of international courtesy on the part of that country cannot be implied therefrom. Due to that fact, a judgment rendered by an Argentine court should be considered as final by our courts, subject to the provisions of § 428 of our Code of Civil Procedure, which we shall hereinafter discuss. The Supreme Court of the United States and other courts in the States have decided that a foreign judgment is conclusive and entitled to recognition in the United States if the country in which the judgment was rendered recognizes the judgment rendered in the United States, so long as the foreign court has acted with jurisdiction and the basic requirements of due process of law have been complied with, the judgment is not against the local public policy, the judgment is not contrary to the basic principles of justice, and has been rendered by an impartial court. *Ritchie* v. *McMullen*, 159 U. S. 235; *Hilton* v. *Guyot, supra; Direction Der Disconto-Gesellschaft* v. *U. S. Steel Corp.*, 300 Fed. 741, 747; *Strauss* v. *Conried*, 121 Fed. 199; *Cruz et al.* v. *O'Boyle*, 197 Fed. 824; *Harrison* v. *Triplex Gold Mines*, 33 F. 2d 667; *164 East Se-*

"1. That the judgment is *in personam;*

"2. That it is not a default judgment against a defendant domiciled in Argentina.

"3. That the obligation that has given rise to the judgment is valid according to our laws.

"4. That the judgment complies with the requirements of the nation where it was rendered and those of the Republic of Argentina."

*venty-Second Street Corp.* v. *Ismay*, (California) 151 P. 2d 29; *Pawley* v. *Pawley*, 46 So. 2d 464, 468; 33 Mich. L. Rev. 1129; 34 Va. L. Rev. 956; Beale *Op. Cit.*, Vol. 2, p. 1364 *et seq.* From the record it does not appear that the judgment has any of the afore-mentioned defects; it therefore should be recognized by our courts. Furthermore, the Argentine Republic as a civilized country has an adequate and proper system of laws. See 97 U. of Pa. L. Rev. 641, *Comparison of the Constitutional Basis of the United States and Argentine Political Systems* by Segundo V. Linares Quintana; Santos P. Amadeo, *Argentine Constitutional Law;* 54 Harv. L. Rev. 1395, in regard to certain aspects of conflict of laws in Argentina; 56 Harv. L. Rev. 470, in regard to the doctrines in Argentina of conflict of laws. As a matter of fact, the Argentine statutes dealing with foreigners are very liberal, since they allow the latter similar civil rights as those allowed to Argentine citizens and judicial personality is recognized in foreign corporations, with the right to be heard in court even if they have not been registered in the country. 6 Tulane L. Rev. 567. In regard to the principles of equality enunciated by the Argentine statutes between the citizens of the country and foreigners, see Víctor Romero del Prado's *Manual del Derecho Internacional Privado*, Vol. 1, p. 212 *et seq.*, 884 *et seq.*, an Argentine treatise. The Argentine statutes, dealing with the requirements for foreign corporations to carry on business in the country, are similar to those prevailing in the United States. Michigan Legal Studies, *The Conflict of Laws, a Comparative Study*, Vol. 2, p. 133, footnote 42, p. 179. As to foreign judgments, see the decisions of the Supreme Court of the Republic of Argentina, in several cases cited in the *Manual de Derecho Internacional Privado* written by Romero del Prado, Vol. 2, p. 930 *et seq.*, where foreign judgments rendered by courts with jurisdiction are recognized as final on the merits. On page 921 of the aforesaid work, a well-known Argentine jurist is cited as stating that since the Code of Argentina provides that a

judgment obligation is valid, its validity must be determined in accordance with the law of the country where the judgment was rendered.

Our courts should reciprocate the liberal attitude of the courts of the Argentine Republic by recognizing their judgments and at the same time keeping pace with international solidarity. The fact that the decision of the *Hilton* v. *Guyot* case, *supra*, is not in point herein becomes more apparent when it is considered that in the case cited the interpretation of a statute was not in issue. The principle involved in the recognition of foreign judgments is recognized by § 428 of our Code of Civil Procedure which reads as follows:

"Section 428.—The effect of the judgment of any other tribunal of a foreign country having jurisdiction to pronounce the judgment, is as follows:

"1. In case of a judgment against a specific thing, the judgment is conclusive upon the title to the thing.

"2. In all other cases the judgment is presumptive evidence of a right as between the parties and their successors in interest by a subsequent title, and can only be repelled by evidence of a want of jurisdiction, want of notice to the party, collusion, fraud, or clear mistake of law or fact." [5]

██ The foreign judgment in the case at bar has not been defeated by evidence of lack of jurisdiction or notice to the parties. The appellant admits that it was duly notified, made a formal appearance, and participated in all the proceedings represented by its two attorneys. That it appointed

---

[5] Section 428 is similar to § 1915 of the Code of Civil Procedure of California. In the year 1907 the California Section was amended, and it reads:

"A final judgment of any other tribunal of a foreign country having jurisdiction, according to the laws of such country, to pronounce the judgment, shall have the same effect as in the country where rendered, and also the same effect as final judgments rendered in this state."

The amendment provides a more definite recognition of foreign judgments than the one provided by the local Section. Even before the amendment the courts of California had decided that foreign judgments were final as to all issues except as to questions of jurisdiction or fraud and that the domestic courts could not review the case on the merits. *Bannister* v. *Campbell*, 71 Pac. 504; *Weir* v. *Vail*, 65 Cal. 466.

one of the three arbitrators, which, in compliance with the Argentine laws estimated the damages. (*Cf. Mena* v. *Llerandi*, 70 P.R.R. 163, 168, where it is stated that plaintiff having appointed an arbiter in compliance with an order of the court, without objecting to it, they could not contest the order on appeal.) The appellant alleges that the Argentine court was without jurisdiction, since § 4 of the Code of Commerce and Civil Procedure of Argentina, states in part as follows:

"In actions *in personam*, the competent judge is the judge of the place where according to the agreement of the parties the obligation is to be performed, and in the absence of an agreement, at the plaintiff's option, the domicile of the defendant or the place where the contract entered into, so long as the defendant is present even though accidentally."

The question of jurisdiction was expressly decided against the defendant by the Argentine court, stating the following, as it appears from the record:

"In regard to the exception itself, it is argued that at page two hundred and twenty-four over of this case there has not been an agreement as to the place of performance, and as this is a case for the collection of money, jurisdiction is at the place where the defendant is domiciled.

"That the case at bar is an action *in personam*, since the plaintiff in its complaint is asking for the collection of commissions that, according to its allegations, are owed to it as reimbursement for expenses incurred by it in negotiations performed on behalf of the defendant. That the facts previously stated bring the case within § 4 of Article 4 of the Code of Procedure, which states that 'in actions *in personam* the competent judge . . . is the judge of the place where the obligation is to be performed. . .' The Supreme Court of Justice of the Nation has interpreted the cited Section to mean that jurisdiction in actions *in personam* is, with reference to the domicile of the defendant, at the place implicitly or explicitly agreed by the parties for the performance of the contract without taking into consideration the limits requested, whether principal or accessories (*Jurisprudencia Argentina*, Vol. twenty-five, p. eight hundred

fourteen; Vol. thirty, p. five hundred eighty; Vol. thirty-one, p. sixty-two; Vol. forty-one, p. two hundred; Vol. forty-three, p. eight hundred eighty-seven; Vol. forty-four, p. twenty-eight; Vol. sixty-four, p. forty-eight) the same view is sustained by the Chamber of Commerce (*Jurisprudencia Argentina*, Vol. fifty-three, p. three hundred ninety-four).

"That from the records and especially from the letter transcribed on p. 228, offered by the defendant, it implicitly appears that the parties agreed that performance was to take place at this Capital, since it was in it that the plaintiff was to perform all its obligations and he could not avail himself of the funds to which the letter of credit makes reference until plaintiff would obtain a certificate showing that all the merchandise had been shipped, that is to say, that the transaction would be concluded at the time that the plaintiff would submit the documents referred to in the afore-mentioned letter. The fact that the letter of credit provided that credit would be open to funds, not within the Capital, is not contrary to the aforesaid conclusion, since payments were made in this Capital and the funds were available to the plaintiff even when he was not in the Capital. For the afore-mentioned reason it is decided that: The allegation contesting jurisdiction referred to on p. 223, with costs, § 24 of Act 4 of 1928, which establishes plaintiff's attorney's fees in the amount of $250, national currency, and of the administrator in the amount of $80 of the same currency is hereby dismissed."

The issue as to the proper venue depends on the question of the place for performance. As we have seen, the Argentine court decided that the Argentine Republic was the place for performance. Generally, if the question of jurisdiction has been litigated and decided by a foreign court, its decision is conclusive. The issue becomes res judicata and it can not be the subject of further litigation in a domestic court, even when the issue was raised by a special appearance in the foreign court. Beale, *Op. Cit.*, Vol. 2, p. 1424 and cases therein cited; Goodrich, *Conflict of Laws*, p. 634; Restatement, Conflict of Laws, § 451, p. 540; *Baldwin* v. *Traveling Men's Assn.*, 283 U. S. 522; *American Surety Co.* v. *Baldwin*, 287 U. S. 156; *Davis* v. *Davis*, 305 U. S. 32, 40;

*Stoll* v. *Gottlieb*, 305 U. S. 165; *Treinies* v. *Sunshine Min.
Co.*, 308 U. S. 66. This is especially true when the absence
of jurisdiction is not completely clear. Restatement, Con-
flict of Laws, Supp. (1948), p. 160, § 451. The Argentine
criterion as to the place of performance of contracts coincides
with the prevailing rule in the United States. The place of
performance is the state where the promise is to be per-
formed, (Restatement, Conflict of Laws, § 355, p. 434;
Beale, *Op. Cit.*, Vol. 2, p. 1259), that is to say, the place
where the promised acts are to be performed. Restatement,
Contracts, Vol. 1, p. 153, § 133b. Whether the contract
in the case at bar is considered a commission contract or one
of sale, (*cf. Torres* v. *Arbona, Jr.*, 72 P.R.R. 719) perform-
ance as to the plaintiff consisted in the payment of what was
owed to it, which payment was to be made in the Argentine
Republic, especially when the contract came into existence
therein, (Beale, *Op. Cit.*, Vol. 2, p. 1260 and cases therein
cited) and as to the defendant, the performance by the plain-
tiff consisted in the shipment of the hung beef, which ship-
ment was to take place in the Argentine Republic. Willis-
ton, *Contracts*, Vol. 3, p. 2342; *cf. Fernández & Co.* v. *Huer-
tas*, 70 P.R.R. 41; *McFaddin Rice Milling Co.* v. *Maldonado*,
31 P.R.R. 450. Complete performance by the plaintiff either
as a seller or a commission salesman consisted in the ship-
ment of the goods. Even assuming that the transaction
amounted to a sales contract, § 1389 of our Civil Code states
that, in the absence of an agreement as to the time and place
where the payment of the price is to be made, this must be
made at the time and place where the thing sold is delivered.
Generally, in the absence of an agreement, the place of de-
livery will be the place at which the thing existed at the time
of contracting the obligation. L. Benito, *Derecho Mercan-
til*, Vol. 2, p. 300; § 1125 of our Civil Code; Judgment of
September 20, 1900, of the Supreme Court of Spain in which
the merchandise was shipped by railroad. It is a well-
established principle of Spanish law that the competent judge

in an action on a sales contract is that of the domicile of the vendor, inasmuch as, according to Spanish law, tender takes place at the time the vendor sends the invoice and ships the goods to the vendee, the latter being responsible for the goods. 10 Manresa 285, 286, 5th ed., and see cases cited therein following that theory.

Therefore, we conclude that the decision of the Argentine court in regard to venue should be sustained. Having decided that the complaint states sufficient facts to constitute a cause of action, we must conclude that the first error was not committed.

As the second error it is contended that the court committed error by dismissing the appellant's motion requesting the reopening of the case and that the judgment be declared void in order that it would be able to offer a certificate of all the evidence submitted to the Argentine court. As we shall see hereinafter the order referred to, being a special order rendered after judgment, was appealable, under the provisions of § 295 of our Code of Civil Procedure. Notwithstanding this, appellant did not appeal from the order but limited itself to appeal from the final judgment. In an appeal against a judgment this Court lacks power to consider an order rendered after the final judgment which is in itself appealable and which has not been the subject of an appeal.[6]

---

[6] Jurisdictional questions are privileged and should be decided with preference and when the court lacks jurisdiction it is its duty to so declare. *P. R. Housing Authority* v. *Sagastivelza*, 71 P.R.R. 406, 409; *Molina* v. *Rodríguez*, 63 P.R.R. 458, 463; *Pérez* v. *District Court*, 70 P.R.R. 624; *López* v. *District Court*, 68 P.R.R. 291, 294. In order that this Court may acquire jurisdiction to entertain appeal to it, it is necessary for the appellant to comply strictly with the general provisions of the law regulating appeals. *González* v. *Jiménez*, 70 P.R.R. 153. The right of appeal is purely statutory and must be determined according to the statute. *Vázquez* v. *Rivera*, 69 P.R.R. 883; *Sampedro* v. *Fournier*, 69 P.R.R. 543; *Ex parte del Valle*, 69 P.R.R. 617. The result reached may seem harsh but we can not escape the terms of the statute. *Guilhon & Barthelemy* v. *District Court*, 64 P.R.R. 289, 296.

The afore-cited § 295 states that an appeal may be taken to the Supreme Court from a special order after a final judgment. As a general rule, no appeal lies from an order refusing to vacate an order or judgment. *Estate of Baker*, 170 Cal. 578; *Reynolds* v. *Reynolds*, 191 Cal. 435; *Pacific States Savings Etc. Co.* v. *Harwell*, 204 Cal. 370; *Bixby* v. *California Trust Co.*, 33 Cal. 2d 495; *Gossman* v. *Gossman*, 168 P. 2d 495. An appeal does not lie from an order denying a motion to vacate a judgment if the grounds upon which the moving party sought to have the judgment vacated existed before its entry and were available on appeal therefrom. *Litvinuk* v. *Litvinuk*, 27 Cal. 2d 38; *Kellow* v. *Lane*, 228 P. 2d 872; *Colbert* v. *Colbert*, 28 Cal. 2d 276. If the motion merely asks to vacate the judgment and does not present any facts for consideration of the court other than those that were presented to the court before rendering judgment, the order denying the motion is not appealable, *Oppenheimer* v. *City of Los Angeles*, 232 P. 2d 26, since the errors alleged to have been committed can be considered on appeal from the judgment, (*Reay* v. *Butler*, 69 Cal. 572; *Postal Telegraph-Cable Co.* v. *Superior Court*, 136 Pac. 538) and the purpose should be to prevent duplicity of appeals against the same judgment; on the same issues, unduly extending the litigation. *Reynolds* v. *Reynolds*, *supra*. Those are the reasons why an order disposing of a motion for reconsideration that refers to the questions included in a judgment and that can be considered in an appeal from the judgment is not appealable. *Sierra, Commissioner* v. *Blondet*, 70 P.R.R. 200; *Gual* v. *District Court*, 71 P.R.R. 283; *Castro* v. *Rexach Racing & Sporting Corp.*, 60 P.R.R. 294; *Guilhon & Barthelemy* v. *District Court*, 64 P.R.R. 289; *Marrero* v. *Olmeda*, 69 P.R.R. 202.

However, if the motion to vacate the judgment is directed to matters that cannot be presented upon appeal from the judgment or is based on facts that were not considered by the court in rendering the judgment, and it does not appear

from the record that they were used as a basis for the judgment, and if the motion makes reference to questions and issues that could not have been considered in the judgment, then the order denying the motion is appealable since there is no duplicity of issues. *Valentin* v. *Valentin*, (Cal.) 209 P. 2d 654; *Kent* v. *Williams*, 146 Cal. 3; *De la Montanya* v. *De la Montanya*, 112 Cal. 101; *Pignaz* v. *Burnett*, 119 Cal. 157; *In re Yoder*, 199 Cal. 699; *Hall* v. *Imperial Water Co.*, 200 Cal. 77; *Helbush* v. *Superior Court*, 278 Pac. 1062; *Johnson* v. *Sun Realty Co.*, 32 P. 2d 393.

In the case at bar the complaint was sustained since the evidence offered by the defendant was insufficient to show that pursuant to § 428 of the Code of Civil Procedure the Argentine court committed manifest error of fact or of law, and the defendant failed to offer all of the evidence introduced in the Argentine court. In this motion for reconsideration and relief from judgment the defendant admits that the judgment was correct as to that issue and petitioned for an opportunity to offer all of the evidence to justify its omission of evidence. The facts and issues involved in the motion were different from those that were the basis for the judgment. The question raised by the motion referred to the trial court's discretion in determining whether or not the failure to offer the evidence could be justified, so as to re-open the case to receive new evidence. That issue is not related to the issues which were the basis for the judgment. Whether the trial court abused its discretion in dismissing the motion is not a question which may be considered in an appeal against the judgment itself inasmuch as the facts which determine a decision as to the motion do not originate and are not included in the judgment or in the evidence and the proceedings which were the basis for the judgment. The issue as to the insufficiency of the evidence is different from the one having to do with the reasons why the necessary evidence was not offered. The bases for the motion are not the same facts submitted to the court before rendering judg-

ment, and the alleged error in regard to the abuse of discretion is not related to the merits of the judgment itself. Hence, the order denying the motion for relief from judgment is appealable. *Garzot* v. *Garzot & Fuertes, Inc.*, 49 P.R.R. 339; *Hastings* v. *Ganaderos Unidos de P. R., Inc.*, 46 P.R.R. 373; *Hernáiz, Targa & Co.* v. *Vivas*, 20 P.R.R. 99; *Sellés* v. *Rodríguez*, 57 P.R.R. 9.

The appellant alleges that its motion is one for reconsideration. From the point of view of substantial justice and reality the title given to a motion does not determine its intrinsic nature. *Cf. Klapprott* v. *United States*, 335 U. S. 601, 614, 615; *People* v. *Gerena*, 72 P.R.R. 211, 213. Generally, a motion for reconsideration refers to questions decided by the judgment or to questions presented to the court that could have been decided by the judgment, or to facts submitted to the court before the judgment was rendered. That is not the type of the motion under consideration.

The "motion for reconsideration and relief" from the judgment is rather in the nature of a writ of *coram nobis*. *Cf. People* v. *Soto*, 72 P.R.R. 385, 387; *People* v. *Gerena, supra*. The writ of *coram nobis* is predicated on errors of fact that fail to appear from the record, that refer to facts that existed at the time the judgment was rendered, and that if known by the court would have affected its decision, when failure to offer the evidence was due to an excusable mistake on the part of the petitioner and not to his negligence. *People* v. *Nazario*, 53 P.R.R. 226; *People* v. *Reid*, (Cal.) 232 Pac. 457, 459; *People* v. *Gilbert*, 25 Cal. 2d 422; 31 Am. Jur. 323 *et seq.*; Annotation in 58 A.L.R. 1286; Moore's Federal Practice, Vol. 3, p. 3256, 1938 ed.; *People* v. *Union Trust Bank*, 95 N.E. 2d 532; *Loew* v. *Krauspe*, 150 N. E. 683. See also Orfield, *"Writ of Error Coram Nobis,"* 20 Va. L. Rev. 423. The writ is similar to a motion to vacate a judgment, (*People* v. *Vernon*, (Cal.) 49 P. 2d 326, 327) and its origin is implicitly authorized by Rule 60(*b*) of our Rules of Civil Procedure. *"Federal Re-*

*lief from Civil Judgments"*, 55 Yale Law Journal, 623, 634; *Preveden* v. *Hahn*, 36 F. Supp. 952; *Cavallo* v. *Agwilines, Inc.*, 6 Fed. Rules Serv. 60b. 31; *McGinn* v. *United States*, 6 Fed. Rules Serv. 60 *b*. 51, Case 3; 4 Fed. Rules Serv. 942, *Effect of Rule 60 b. on other Methods of Relief from Judgments"; Fraser* v. *Doing*, 130 F. 2d 617; *Fiske* v. *Buder*, 125 F. 2d 841; 3 Moore's Federal Practice 3273, 1938 ed.

Now, a resolution in regard to a writ of *coram nobis* constitutes a special order rendered after a judgment. *In re Paiva*, 31 Cal. 2d 503, 504; *People* v. *Gilbert, supra; Frank* v. *Salomon*, 34 N.E. 2d 424; *Audsley* v. *Hale et al.*, 261 S. W. 117; *People* v. *Union Trust Bank, supra;* 20 Va. L. Rev. 423, 437.

■ Inasmuch as the order dismissing the motion for "reconsideration and relief" from the judgment is appealable but no appeal has been taken therefrom, this Court lacks power to review the order in an appeal from the judgment. *McCourtney* v. *Fortune*, 42 Cal. 387; *Jenness* v. *Bowen*, 77 Cal. 310; *Swanston* v. *Clark*, 153 Cal. 300; *Boos* v. *Byrnes*, 166 Pac. 596; *Wells Fargo Bank & Union Trust Co.* v. *Broad*, 39 P. 2d 241; 5. C.J.S. 147, § 1493.

■ Our refusal to review the order dismissing the appellant's motion is not strict or unfair. The appellant was at fault for not appealing from the order. *Cf. Ackermann* v. *United States*, 340 U. S. 193, 198. Furthermore, since § 428 of our Code of Civil Procedure provides that a foreign judgment may be rejected on the basis of evidence of a clear mistake of law or fact, that issue has to be decided pursuant to the laws of Argentina, especially in regard to the substantive provisions prevailing in the Argentine Republic in regard to commission contracts or sales contracts, so long as those provisions are not against the public policy of this jurisdiction. This is due to the recognition given to a judgment of a court of Argentina and to the principle of international courtesy. Furthermore, from the point of view of the conflict of laws, there is a conflict between author-

ities as to whether the nature, validity and effect of a contract should be determined in the light of the laws in force at the place where the contract came into existence (*lex loci celebrationis*)[7] or by the law at the place of performance (*lex loci executionis*). As regards this conflict see Williston, *on Contracts*, Vol. 6, § 1792, p. 5095 *et seq.*, revised edition; Romero del Prado, *Derecho Internacional Privado*, Vol. 2, p. 343. From both points of view the applicable law is the law of the Republic of Argentina since the contract was completed in that country, by the verification of the acceptance by the plaintiff (Romero del Prado, *Op. Cit.*, Vol. 2, p. 334; Corbin, *Contracts*, Vol. 1, p. 245, 255, § § 78 and 81; Restatement, Contracts, Vol. 1, § 67), and as we have already seen, it was in that country where the contract was performed.

Defendant-appellant has failed to offer in evidence even in its motion for "reconsideration and relief from judgment," the afore-mentioned Argentine laws and therefore this case should be considered as definitely concluded. Furthermore, the case of *Ingenohl* v. *Olsen & Co.*, 273 U. S. 541, decided by the Supreme Court of the United States is in point. The opinion of Justice Holmes, reversing the decision of the Supreme Court of the Philippine Islands, which decided that pursuant to a legal provision identical with that of our aforecited § 428, a court of Hong Kong committed error of law and of fact in rendering the judgment. The Supreme Court of the United States stated that the case should be decided on the basis of the prevailing law in Hong Kong, as it was interpreted by the Hong Kong Court, and that its decision should be considered as correct. It is stated that the legal provision of our § 428 should never be construed as refusing validity to the Hong Kong judgment due to the "delicate consideration of international relations."

■ In his third error the appellant attacks the decision of the lower court ordering defendant-appellant to pay the

---

[7] This is the principle enunciated by the Restatement, Conflict of Laws, § 332.

sum of $3,000 for attorney's fees. After having considered all the circumstances and facts involved herein we conclude that the lower court did not err as to the amount of attorney's fees for the plaintiff-appellee, and therefore said decision should be ratified.

The judgment appealed from will be affirmed.

Mr. Justice Negrón Fernández concurs in the result.