John J. Dillon, S.
One Giovanni Antonelli has objected to that portion of the executor’s account which rejects his claim for $20,000 with interest from April 1, 1935. The claim was *271 originally filed with the executor on or about January 3, 1956. In form it appeared to be a common-law claim for work, labor and services performed for the decedent in Italy prior to his death on August 1, 1941. Schedule D-2 of the account indicates that the claim was rejected for reasons explained in Schedule I. Certain interested parties were authorized to serve replies to the objection, and pleaded the Statute of Limitations. On the scheduled hearing date the objectant moved to amend his claim and his objection to the account. The motion was granted with leave to the petitioner and other interested parties to introduce proof at a later date, if so advised, in refutation of the evidence supporting the claim as amended. The objectant introduced his proof. Counsel for those opposing the claim thereupon moved to dismiss the claim and the objection on the ground that the proof was insufficient in law. The court reserved decision. It was then agreed that the hearing should be adjourned, that the parties should be afforded an opportunity to submit briefs on the motion to dismiss, and that the court should now pass on the motion.
The claim as amended is founded on what purports to be a final judgment of the Civil Tribunal of Rome, Republic of Italy, registered in Rome on December 30,1957, awarding the claimant judgment against the decedent in the sum of $20,000, with interest from March 11, 1936, together with costs and attorneys? fees. The objectant’s evidence is almost entirely documentary, and discloses the following history.
On March 11,1936 the objectant commenced an action against the decedent in the Civil Tribunal of Rome, for damages based on the alleged breach of a contract under which Antonelli was to obtain from the government of what was then the Kingdom of Italy a concession for the installation in Sicily of an oil refinery and a license for the importation of crude oil. The decedent appeared in the action by an Italian lawyer named Dr. Vergili. At some time prior to May, 1938 the action was “ cancelled ” (which apparently means stricken from the calendar) “because of too many adjournments.” It was restored on May 4, 1938 but again “ because of too many adjournments the matter was cancelled from the calendar on February 27, 1939.” This was the situation when William Rhodes Davis died on August 1,1941.
In some manner, the details of which are not clear, the action came before the court again on August 21, 1942. The interlocutory judgment entered many years later recites the fact that “the defendant did not appear” — a circumstance not at all strange since he had died two years earlier — and that “ the *272 defendant’s attorney was continuously absent.” There followed a 12-year hiatus, explained only by the statement in the interlocutory judgment that “after various adjournments the case was decided on in a hearing on December 19, 1954.” This hearing must have been in the nature of an inquest. The defendant was dead, no representative of his estate had ever been substituted and the defendant’s attorney was “continuously absent. ’ ’ On December 10, 1954 an interlocutory judgment was signed determining that 6 ‘ the plaintiff has the right to collect from the defendant an adequate compensation for his services during 1934 and 1935,” the amount of which was to be determined later. On the same date the court, by separate order, appointed a “technical expert” to determine the damages. Apparently evidence was introduced before the technical expert, and the matter came before the court again on October 4, 1957. The result was a final judgment for $2*0,000, with interest for more than 21 years, costs and attorneys’ fees. William Rhodes Davis, who had been dead for 16 years, was ordered to pay it personally.
Up to this point no representative of the Davis estate had ever been brought into the action. More than a year after the entry of the final judgment the executor undertook to appeal from both the interlocutory and final judgments to the Court of Appeals of Rome. On May 19, 1960 that court dismissed the appeal on the ground that it had not been taken within 30 days. In its decision the Court of Appeals of Rome held that under Italian law the death of the defendant during the pendency of the action was of no consequence because it had not been brought to the court’s attention by the defendant’s attorney; and that the fact that the plaintiff’s attorney knew that Davis was dead and reported the fact to the court was likewise unimportant, “ since only the attorney for the defendant had the authority to report or serve notice of the death of his client, and nothing could replace it ’ ’.
Under these facts it must be concluded that the judgment was valid in Italy and could have been enforced against assets of the decedent’s estate situated in Italy, if there were any. Whether the judgment is enforcible against assets in the State of New York presents a different question. The law of New York on the enforcement of judgments rendered in foreign countries is reasonably clear. The problem is one of comity; and it has been said that it “ rests, not on the basis of reciprocity, but rather upon the persuasiveness of the foreign judgment” (Johnston v. Compagnie Generals Transatlantique, 242 N. Y. 381, 387). This general rule was more precisely explained in Cowans v. *273 Ticonderoga Pulp & Paper Co. (219 App. Div. 120, 121-122, affd. 246 N. Y. 603) as follows: “ The general rule in this State is settled as follows: A judgment recovered in a foreign country, when sued upon in the courts of this State, is conclusive so far as to preclude a retrial of the merits of the case, subject, however, to certain well-recognized exceptions, namely, where the judgment is tainted with fraud, or with an offense against the public policy of the State, or the foreign court had not jurisdiction.”
Here there is no claim of fraud, or of lack of jurisdiction in the foreign court, but those who oppose the claim assert that the rendition of a judgment against a dead man is contrary to the policy of this State. The importance of the question of public policy was accentuated in Martens v. Martens (284 N. Y. 363, 365) where it was said flatly that foreign judgments “ must not contravene our public policy”; and again in Rosenbaum v. Rosenbaum (309 N. Y. 371) where the Court of Appeals spelled out the plain distinction between the judgments of foreign nations and those of sister States which have the constitutional guarantee of full faith and credit.
With respect to the question at issue the public policy of New York is not difficult to discover. It has been laid down by the Legislature in section 478 of the Civil Practice Act, which forbids the entry of judgment against a party who dies before a verdict, report or decision has been rendered against him, and declares a posthumous verdict, report or decision to be void. A New York judgment obtained in disregard of this statute would be denied enforcement (Wanamaker v. Springstead, 274 App. Div. 1008; Honor Brand Milling Co. v. Robinson, 192 Misc. 165). Section 478 undoubtedly represents this State’s idea of fairness and justice when death intervenes in the course of litigation. But it seems likely that its roots go deeper, and that it has its foundation in due process of law. (Cf. McMaster v. Gould, 240 N. Y. 379.) In our concept of due process an opportunity to be heard is an indispensable element (Ives v. South Buffalo Ry. Co., 201 N. Y. 271, 293; Inter chemical Corp. v. Mirabelli, 269 App. Div. 224). In that view the New York statute has grown from the soil of the Constitution, and its provisions are expressive of a policy which is more than provincial. In that view also a foreign judgment rendered after the defendant’s death and without representation by his estate lacks the “ persuasiveness ” mentioned by Judge Pound in the Johnston case (supra).
The abortive attempt of the executor to appeal effected no change in the situation. Even if his appeal had been heard on *274 the merits the Italian court would have acquired no jurisdiction over the estate located in New York (Irving Trust Co. v. Seltzer, 265 App. Div. 696). But the executor was never afforded a hearing. He was told that he had no standing to appeal, that his effort had come too late. Such a ruling could not enlarge the jurisdiction which the court had at the time when the judgment was recovered (Benadon v. Antonio, 10 A D 2d 40).
The objectant’s argument that the question should not be determined without completing the proof cannot be accepted. All the necessary facts are already before the court, including the basic fact that the judgment was rendered personally against n man long since dead. The court holds that such a judgment obtained in a court of a foreign country is contrary to the public (iolicy of New York and is, therefore, unenforcible. The motions to dismiss the claim and the objection are, therefore, granted.
The various items of relief prayed for in the petition will be disposed of in a separate decision.